ELLIS, Appellant, vs. HOF and another, Respondents.

*October 20—November 15, 1904.*

*Signatures: Forgery: Burden of proof: Statutes.*

1. In an action of foreclosure based on a note and mortgage,—where the defendant has in his verified answer denied their execution, and alleged that the instruments are forgeries and not signed by him,—under sec. 4192, Stats. 1898 (providing that every written instrument purporting to have been signed or executed by any person shall be proof that it was so executed, until the person by whom it purports to have been so signed or executed shall specifically deny the signature or execution of the same by his oath, or affidavit, or by his pleading duly verified), the burden of proof is on the plaintiff to prove the signature.
2. In an action of foreclosure based on a note and mortgage, alleged to be forgeries, the evidence is *held* to support a finding that the signatures affixed were not the genuine signatures of defendant.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This action was commenced June 4, 1903, to foreclose a note and mortgage purporting to have been executed by the defendant *Hof* November 19, 1897, to the defendant Henry Herman, for $6,500, to become due three years from that date, with interest at six per cent. payable semi-annually, and secured by mortgage upon the lands described, which mortgage was recorded November 22, 1897. The complaint alleges that May 3, 1902, Henry Herman assigned the note and mortgage to the plaintiff as collateral security to a note given on that date by Henry Herman to the plaintiff for $3,050, payable on demand, and that no part thereof had been paid, and that such assignment was recorded April 17, 1903. The complaint further alleges that the defendant *Farwell Investment Company* has a lien by way of mortgage on one of the lots described prior to the plaintiff's mortgage, the amount of which should be determined so as to enable the

plaintiff to redeem therefrom; but the complaint asks no per--
sonal judgment against the company. ' The defendant *J. J.*
*Hof,* by way of verified answer denied that he executed the
note and mortgage set out in the complaint, or either of them,
and alleges that, after having seen such pretended note and
mortgage, he avers that the signatures *"J. J. Hof"* to the
said note and mortgage are forgeries; that he never signed
them, or either of them; and that he never saw either of them
until the same were exhibited to him June 8, 1903; and that
he had no knowledge of the existence of either of them, or any
information concerning the same, until in May, 1903, when
he first learned thereof from inquiries made by the plaintiff's
attorneys.     A trial being had, the court found at the close
thereof: (1) That February 2, 1897, Herman caused a sher-
iff's deed of all the lands described in the complaint to be
given to said *J. J. Hof,* and that the same was duly recorded;
that Herman also caused all of said premises to be appar-
ently conveyed to *J. J. Hof* by warranty deed from Markey
and wife, July 17, 1897, which deed was recorded January
3, 1898.     (2) That such conveyances were so made to *J. J.*
*Hof* for the sole use and benefit of Herman, and *Hof* had no
interest therein whatever.     (3) That May 3, 1902, Herman
borrowed of the plaintiff $3,050, and gave to the plaintiff
therefor his note for that amount, due in sixty days from
that date, with interest at six per cent., and to secure such
loan of $3,050, Herman having the $6,500 note and mort--
gage in his possession at the time, did on the date named
assign the same to the plaintiff as collateral security for the
payment of the note of $3,050 mentioned, and such assign-
ment was recorded as stated, and that no part of the $6,500
note had been paid, and that there was due on the note of
$3,050 the sum of $3,337.25.     (4) That by the terms of the
$6,500 note it became due as stated.     (5) That *J. J. Hof*
upon the trial disclaimed any ownership in any of the
premises.     (6) That the *Farwell Investment Company* had

a first mortgage lien upon one of the lots described for
$7,348.49, with interest from December 3, 1903, for which
it was entitled to judgment of foreclosure and sale against
all of the other parties. (7) That the plaintiff had a first
lien by way of mortgage upon the other premises described.
(8) That $350 was a reasonable solicitor's fee therein, and
should be allowed to the plaintiff upon the foreclosure of his
mortgage; that *lis pendens* was duly filed June 26, 1903.
(9) That the signature of *J. J. Hof* affixed to the note and
mortgage of $6,500 was not the genuine signature of *J. J.
Hof,* but was a forgery; that *J. J. Hof* never executed that
note and mortgage, or either of them; that he never author-
ized any person to execute the same, or either of them, for
him, and he had no knowledge of the existence of the Markey
deed, mentioned, or the note and mortgage, or either of them,
until April, 1903; that *Hof* never received any consideration
for such note and mortgage, and never ratified the execution
of said deed or note or mortgage, and promptly disavowed the
same as soon as he learned of their existence. As conclusions
of law the court found, in effect: (1) That *J. J. Hof* was
entitled to judgment dismissing the complaint as to him,
and to have and recover his costs and disbursements, to be
taxed and allowed and entered in the judgment; (2) that the
note and mortgage of $6,500 created a mortgage lien upon
the premises described, of which Henry Herman was the
equitable owner (subject to the rights and lien of the *Far-
well Investment Company,* as found), for $3,050, with in-
terest at six per cent. from May 3, 1902; (3) that the plain-
tiff was entitled to judgment of foreclosure and sale (except
as against *J. J. Hof*) unless the $3,337.25, with interest,
should be paid before the expiration of the year, as therein
stated. Judgment was thereupon entered therein according
to such findings. The plaintiff appeals from so much of the
judgment as ordered and adjudged that the complaint be dis-
missed as to the defendant *J. J. Hof,* and that *J. J. Hof*

·have and recover judgment against the plaintiff for $100.56, the amount of his costs and disbursements in the action.

For the appellant there was a brief by *Turner, Pease & Turner,* and oral argument by *W. J. Turner.*

For the respondents there was · a brief by *Hoyt, Doe, Umbreit & Olwell,* and oral argument by *F. M. Hoyt.*

CASSODAY, C. J.    The statute declares:

"Every written instrument purporting to have been signed ·or executed by any person shall be proof that it was so signed or executed until the person by whom it purports to have b˘en ·so signed or executed shall *specifically* deny the signature or ·execution of the same by his oath or affidavit *or by his plead-ing duly verified.*"    Sec. 4192, Stats. 1898.

This court has repeatedly held that this section only "dis-·penses with proof of the signature to a written instrument until the person by whom it purports to have been signed ·shall specifically deny the signature of the same by his oath or affidavit *or by his pleading duly verified.    Wallis v. White,* ·58 Wis. 26, 15 N. W. 767; *Nielson v. Schuckman,* 53 Wis. ·638, 11 N. W. 44.    Here the answer of the defendant *J. J. Hof,* duly verified, expressly denies that he ever executed the note or the mortgage, and avers that the signatures of ·*"J. J. Hof"* to said note and mortgage were forgeries, and ·that he never signed the said note or mortgage, or either of them, and never saw either of them until they were exhibited ·to him by the plaintiff's attorneys four days after the com-mencement of this action.    "In such a case," as said by Chief Justice COLE, speaking for this court, "the statute imposes upon the party claiming the note to· be valid the burden of ·proving the signature, and that the note is a binding obliga-tion as against the party resisting the payment thereof." ·*Thomas Ludlow & Rodgers v. Berry,* 62 Wis. 78, 80, 22 N. ·W. 140; *Finlay v. Prescott,* 104 Wis. 614, 618, 80 N. W. ·930.    Nevertheless, counsel for the plaintiff contend that ·the burden was on the defendant *Hof* to prove that his sig-

natures were forgeries by clear, convincing, and satisfactory evidence, and beyond all reasonable controversy. In support of such contention counsel cite cases in this court where the signatures were genuine, and where no attempt was made, or, if made, there was a failure to bring the case within the provisions of the statute quoted. The question is important here only as meeting the contention of counsel, since the defendant *Hof* assumed the burden of proving that his signature to the note and mortgage were forgeries; and, as indicated in the statements of facts, the trial court found in his favor; and, as we read the record, such findings are sustained by clear, convincing, and satisfactory evidence, and beyond all controversy. The general nature of the evidence may be briefly stated. The note and mortgage purport to have been made in Milwaukee November 19, 1897. The notary public was the confidential clerk of Henry Herman, and had been for years. He left Milwaukee soon after Herman absconded, and removed to Oklahoma. He testified that he thought the signature was *Hof's,* but he had no recollection of the execution of the mortgage in suit, except that his signature appears on it. He admits that he had certified to acknowledgements without the parties being before him, and that it was a common thing in Herman's office in 1900; but that he never did so in 1897. The other subscribing witness testified that he had no recollection of witnessing the instrument, and could not say that *Hof* signed it in his presence; that, if Herman showed him the signature and asked him to sign as a witness, he would have done so, without *Hof* being present, if he believed it to be *Hof's* signature, as he did. At the time of executing the note and mortgage, *Hof* resided at Sobieske, in Oconto county, and had for the two years immediately preceding, and has ever since. For some years prior to 1895 he had resided in Milwaukee, and had business relations with Henry Herman. The signatures were denied by *Hof* in the most positive manner. His letter book and his memorandum

book furnished written evidence as to his whereabouts during almost every day in the month of November, 1897. They show that he was at his home in Sobieske on the day the note and mortgage purport to have been executed in Milwaukee; that on that day he wrote a letter from Sobieske to Milwaukee; that he was in Sobieske during the whole of the week before and for more than a week afterwards. *Hof* took his meals at a hotel in Sobieske on the 19th, 20th, 21st, and 22d of November, 1897, and the keeper of the hotel and his wife testified that *Hof* was there on each of those days; and they are corroborated by entries in their account book of charges against him for such board. Other witnesses testified to business transactions with him in Sobieske on November 19 and 20, 1897. Six experts testified that the signatures *"J. J. Hof"* on the note and mortgage, in their opinion, were not made by *Hof*. Some of them had long been acquainted with his handwriting, and one, especially skilled in such matters, after comparing such signatures with those admitted to be genuine and from enlarged photographs thereof, in evidence, states thirteen several differences between the genuine and the forged. Such differences are apparent upon close inspection. We must hold that the findings are amply supported by the evidence.

2. Counsel further contend that, if *Hof* did not execute the note and mortgage, he adopted, ratified, and confirmed their execution. It is enough to say that we find no evidence in the record that would justify a finding that *Hof* was estopped by conduct from denying the signatures. On the contrary, all his conduct is the other way.

*By the Court.*—The judgment of the circuit court is affirmed.