Murphy, Appellant, vs. Estate of Skinner, Respondent.

*March 26—April 13, 1915.*

*Bills and notes: Defenses: Waiver: Forgery: Ratification: Estoppel: Payment of other forged notes: Evidence as to genuineness of indorsement: Presumptions: Burden of proof: Appeal: Harmless error.*

1. A party who refuses to pay a note which is presented to him and, although he does not unequivocally assert that his signature is a forgery, does not say or do anything to lead the holder to believe that he does not intend to rely upon any legitimate defense he may have, does not thereby ratify the signature if forged, or waive the defense of forgery, or estop himself from setting up that defense.

2. When one knowingly pays a note to which his name is forged he does not thereby render himself liable for other forgeries of his name by the same person, where those dealing with the forger have no knowledge that any forged notes have been paid and have not been injured or misled or deceived by such payment.

3. Where, in an action against the estate of an alleged indorser of a note, the defense was forgery, other notes found among his effects upon which the indorsements of his name were concededly written by the same person as was the indorsement upon the note in suit, were competent evidence on the question of the genuineness of the latter indorsement—the fact that such other notes had come into the possession of the deceased giving rise to a presumption that he had paid them, and such payment being in the nature of an admission that he had in fact indorsed them. SIEBECKER and KERWIN, JJ., dissent.

4. Exclusion of such notes was not, however, a prejudicial error in this case, because the evidence that the indorsement in question was forged so greatly outweighed the evidence of its genuineness that the verdict would have been the same if they had been admitted.

5. In an action against the estate of an alleged indorser of a note, where the defense was forgery, the burden was upon the plaintiff to show the genuineness of the signature by a preponderance of the evidence, and the jury were properly so instructed. Assuming that sec. 4193, Stats. (making possession of the note presumptive evidence that it was indorsed by the person by whom it purported to be indorsed), applies to the case of a deceased

indorser, it does not relieve plaintiff of the burden of proof, but simply permits him to make a *prima facie* case in a way in which he could not make it before.

6. Where the plaintiff has the burden of proof at the beginning of a trial it remains with him to the end. It is not shifted when a *prima facie* case has been made.

APPEAL from a judgment of the circuit court for Milwaukee county: E. B. BELDEN, Judge. *Affirmed.*

The plaintiff, *Lawrence Murphy,* filed in the county court of Milwaukee county a verified petition setting forth that on the 14th day of March, 1906, one Lloyd Skinner made, executed, and delivered to plaintiff a promissory note for $5,650 with interest at eight per cent., due May 24, 1906, which note was signed by Lloyd Skinner, payable to his own order, and indorsed by Lloyd Skinner and J. W. Skinner. Plaintiff asserts that he received the note from Lloyd Skinner for a valuable consideration at or about the time it was dated, and that when it fell due it was presented for payment and payment was refused and the note was duly protested, and that no part thereof had been paid. J. W. Skinner having died, the claim was presented against his estate. His widow, who was the executrix of the estate, denied under oath that the indorsement of the name of J. W. Skinner on the back of the note was in the handwriting of the decedent. The claim was disallowed in the county court and an appeal was taken to the circuit court, where the case was tried by a jury. The court submitted but one question to the jury, being the following: "Is the signature 'J. W. Skinner' on the back of the promissory note sued on in this case in the handwriting of J. W. Skinner, now deceased?" The jury answered this question "No." The plaintiff, *Murphy,* moved to change the answer to the question from "No" to "Yes," and, in case such motion was denied, then for judgment notwithstanding the verdict, and, in case both motions were denied, for a new trial. All of these motions were denied, and on motion of

the attorney for the estate judgment was entered dismissing plaintiff's complaint. From that judgment the plaintiff appeals.

For the appellant there was a brief by *William E. Burke,* attorney, and *Lehr, Kiefer & Reitman* and *Lester C. Manson,* of counsel, and a supplemental brief signed by *Charles S. Thompson* and *Lester C. Manson,* of counsel; and the cause was argued orally by *Mr. Burke* and *Mr. Thompson.* They contended, *inter alia,* that even if Mr. Skinner did not personally indorse the note there was evidence upon which the jury might have found that after he received knowledge that his name was on the back of it he ratified or adopted it as his own; and that it was error not to submit this issue to the jury. Whether or not a person is held to have ratified a forged indorsement or signature depends considerably upon the intention. The question of intention is ordinarily a question of fact determined by the jury. *Hoff v. Hackett,* 148 Wis. 32, 34, 134 N. W. 132; *Germania Nat. Bank v. Lachenmaier,* 156 Wis. 573, 146 N. W. 779, and cases cited. The principal cases in this country on the question of ratification or adoption of forged signatures are collected in the notes to the following cases: *Traders' Nat. Bank v. Rogers,* 167 Mass. 315, 45 N. E. 923, 36 L. R. A. 539, 542, 57 Am. St. Rep. 458; *Shinew v. First Nat. Bank,* 84 Ohio St. 297, 95 N. E. 881, 36 L. R. A. N. S. 1006; *Henry v. Heeb,* 114 Ind. 275, 16 N. E. 606, 5 Am. St. Rep. 613. It is an elementary proposition of law that where a person owes a duty to speak, his silence is in contemplation of law an affirmance of the stand in which he then finds himself, and he thereby adopts, confirms, or ratifies his situation or becomes thereby, thereafter, estopped from taking an opposite position. *Waddle v. Morrill,* 26 Wis. 611; *Kingman v. Graham,* 51 Wis. 232, 8 N. W. 181; *Wheeler & W. M. Co. v. Monahan,* 63 Wis. 198, 23 N. W. 127; *Wis. O. L. Co. v. Laursen,* 126 Wis. 484, 105 N. W. 906; *Casco Bank v. Keene,* 53 Me. 103; *Forsyth v. Day,* 46

Me. 176; *Somers v. Germania Nat. Bank,* 152 Wis. 210, 138 N. W. 713; 33 Cyc. 1529. While there exists a dispute in the authorities respecting the adoption, confirmance, or ratification of a forged signature, it would seem that the better rule is that such a signature may be adopted or ratified or the wrong of the forgery waived by conduct. *Ellis v. Hof,* 123 Wis. 201, 101 N. W. 368; *Somers v. Germania Nat. Bank,* 152 Wis. 210, 138 N. W. 713; *Ofenstein v. Bryan,* 20 App. D. C. 1; *Goodspeed v. Cutler,* 75 Ill. 534; *Paul v. Berry,* 78 Ill. 158; *Murtaugh v. Colligan,* 28 Ill. App. 433; *Greenfield Bank v. Crafts,* 4 Allen, 447; *Bartlett v. Tucker,* 104 Mass. 336; *Wellington v. Jackson,* 121 Mass. 157; *Central Nat. Bank v. Copp,* 184 Mass. 328, 68 N. E. 334; *Corser v. Paul,* 41 N. H. 24; *Crout v. De Wolf,* 1 R. I. 393; *Corner Stone Bank v. Rhodes,* 5 Ind. Terr. 256, 82 S. W. 739, 67 L. R. A. 812; Mechem, Agency, §§ 116, 130, 131, 135, 155; Reinhard, Agency, § 121. Where a benefit accrues to the alleged maker, the silence and accepting the benefits ratify the forged signature. And where the silence works a prejudice to the holder, ratification of the forgery occurs. *Fall River Nat. Bank v. Buffington,* 97 Mass. 498; *State v. Abramson,* 57 Ark. 142, 20 S. W. 1084; *Casco Bank v. Keene,* 53 Me. 104; *Hefner v. Dawson,* 63 Ill. 403; *Rudd v. Matthews,* 79 Ky. 479, 3 Ky. L. Rep. 286; *Woodruff v. Munroe,* 33 Md. 146; *Crout v. De Wolf,* 1 R. I. 393; *Forsyth v. Day,* 46 Me. 176. And where the holder of forged paper is prejudiced, in that by the delay in repudiating the signature he was deprived of his remedy against the forger, the ratification takes place. Lloyd Skinner left Milwaukee in March, 1906, and has not since been heard from by appellant. *Fall River Nat. Bank v. Buffington,* 97 Mass. 498; *State v. Abramson,* 57 Ark. 142, 20 S. W. 1084; *Casco Bank v. Keene,* 53 Me. 104; *Hefner v. Dawson,* 63 Ill. 403; *Continental Nat. Bank v. Nat. Bank of Comm.* 50 N. Y. 575; *Rudd v. Matthews,* 79 Ky. 479, 3 Ky. L. Rep. 286; *Forsyth v. Day,* 46 Me. 176;

*Merrill v.'Tyler,* Seld. Notes (N. Y.) 83; *Corner Stone Bank v. Rhodes,* 5 Indian Terr. 256, 82 S. W. 739, 67 L. R. A. 812.

For the respondent there was a brief signed by *Frank M. Hoyt,* attorney, and *Thomas M. Kearney,* of counsel, and oral argument by *Mr. Hoyt.*

BARNES, J. 1. The note in suit fell due May 24, 1906, and was protested for nonpayment on that day. Mr. Hughes, the notary who protested the note, testified that he had no recollection of Mr. Skinner's calling on him in reference thereto. The plaintiff promptly placed the note in the hands of his attorney, Mr. Kaumheimer, for collection, and Kaumheimer wrote Skinner demanding payment on May 28th. No written reply was received, but Kaumheimer was requested by telephone to call on Skinner in reference to the matter. He did so and was advised by Skinner that he would not pay the note. Kaumheimer did not pretend to remember the conversation, but testified that his impression was that Skinner said there was some question about the signature. No suit was brought on the note by Kaumheimer. In 1907 the note was placed in the hands of Attorney Donovan for collection and remained with him for over a year and no suit was brought by him. Later, one Pestalozzi presented the note to Skinner for payment, which was refused. In May, 1910, the note was placed in the hands of Attorney Trottman for collection, who demanded payment, which demand was refused. In 1911 appellant placed the note in the hands of Attorney Blatchley with instructions to sue, but no suit was brought and the note was returned to the plaintiff. Nothing further was done until after Mr. Skinner's death, which occurred a few weeks before the statute of limitations would have run on the note. It was then filed as a claim against Skinner's estate by Attorney Wegner.

The appellant argues that it was the duty of Skinner to promptly advise the bank which held the note for collection

at maturity that his signature thereon was forged, and that it was also his duty to unequivocally so advise Kaumheimer and the other parties who presented the note for payment. Appellant also argues that the conduct of the deceased furnished evidence of ratification of the signature if it was forged, and of estoppel to deny the genuineness of the signature, and also of waiver of the defense of forgery, and that it was error not to submit appropriate questions to the jury covering those issues. The plaintiff requested the court to submit a question covering the matter of ratification.

It appears without dispute that Mr. Skinner promptly declined to pay the note when first requested so to do, and that he persistently and consistently declined to do so thereafter until the time of his death. It is difficult to see wherein the acts referred to constituted evidence of ratification of the signature, or wherein Skinner waived any right to set up the defense of forgery or how he estopped himself from so doing. A party who refuses to pay a note that is presented to him does not thereby waive or lose any legitimate defense he may have to an action brought on the instrument. It would be just as reasonable to claim here that the defense of payment or of no consideration was lost to Skinner as it is to claim that the defense of forgery was lost. Skinner neither said nor did anything to lead the plaintiff to believe that he did not intend to rely on any legitimate defense he might have. The case is not one where the plaintiff was misled to his disadvantage into believing that some defense other than that finally interposed was relied on. It is apparent that the plaintiff was not in fact misled. Skinner was understood to be a man of means, amply responsible for the amount of the note. Plaintiff knew that the note had not been paid, and, if it represented a good-faith transaction, forgery was about the only defense left. Kaumheimer understood that the refusal to pay arose over the signature, and presumably so informed his client. That plaintiff understood where the trouble lay, is quite evident from the fact that when the note was given to

Trottman for collection there was turned over with it photographic copies of the genuine signature of J. W. Skinner.

2. Pursuant to notice served on her, the executrix produced a note for $500 dated in October, 1905, and another for a like amount dated in February, 1906. Both of these notes were signed by Lloyd Skinner and indorsed by J. W. Skinner. Admittedly the signature "J. W. Skinner" on these notes was genuine. She also produced two small notes executed by Lloyd Skinner in 1902, aggregating $90, which bore the name "J. W. Skinner" on the back. It is conceded that if the name of J. W. Skinner was a forgery on the note in suit it was also forged on these notes, and that the same party wrote all three signatures. J. W. Skinner waived protest on these two notes, and from the fact that they were found among his effects it is fair to presume that he paid them. Four other notes signed by Lloyd Skinner and containing the name of J. W. Skinner on the back were also produced, one dated March 5, 1902, for $700; one dated January 23, 1906, for $1,000; one dated March 14, 1906, for $1,000; and one dated April 25, 1906, for $1,528. It is conceded that the same party who wrote the name "J. W. Skinner" on the note in suit also wrote the name on these notes, and that if any of these signatures were forgeries all of them were. The indorsement on at least three of the four last mentioned notes was passed as genuine by the cashier of the First National Bank, where Mr. J. W. Skinner kept an individual account, and where the Northwestern Mutual Life Insurance Company, of which Mr. Skinner was secretary, also kept a large account; so that the bank officials had every reason to be familiar with his signature.

The court refused to receive these several notes in evidence, and it is insisted that this ruling was erroneous for the following reasons:

(a) The proof was competent to show that J. W. Skinner adopted as his own the signature in question and ratified its use.

(b) By his conduct in paying the forged notes, if they were forged, he estopped himself from asserting that the signature was not his, and waived any right he might have to question its genuineness.

(c) In any event the proof was competent as tending to show that the signature was in fact genuine.

On the first two of the above propositions it is claimed that if adoption, ratification, estoppel, or waiver was not established as a matter of law, the notes, in connection with the evidence offered in relation thereto, constituted proof from which the jury might find the fact in plaintiff's favor on one or more of these issues.

These contentions raise rather novel questions. Lloyd Skinner and J. W. Skinner were half-brothers. J. W. Skinner held an important office in one of the large life insurance companies of the country. If his half-brother had forged his name, he was no doubt anxious to conceal that fact and to shield his relative from the penitentiary. Whether his conduct was reprehensible or not, it was not very unusual. If he violated the law, he followed the custom of human nature, generally speaking at least. If the plaintiff had been misled or deceived, or parted with his money on the strength of this conduct, a very different question would be before us. But he knew nothing of the existence of these notes until the trial of this case, more than six years after he parted with his money. Broadly stated the proposition is this: If a party knowingly pays notes to which his name is forged, to save a relative and in a sense himself from disgrace, does he thereby render himself liable for the payment of all other forgeries which the guilty party may commit, where those who deal with the forger have no knowledge of the fact that any forged notes have been paid, and have not been harmed in any way by such payment? If the question be answered in the affirmative, then no one would knowingly pay a piece of paper to which his name was forged, because to do so would place the

party involved at the mercy of the forger and in a position that might result in financial ruin. The proposition does not appear to be reasonable. When a party pays a note to which his name is forged, it cannot be said that he has any intention of assuming liability for all other forgeries of his name by the same person. Where the holder of another forged note knows nothing about any other forgery having been paid, and where he has not been injured or misled or deceived by such payment, we do not see on what basis he can claim the right has been lost to contest the payment of the forged instrument which he holds. We have examined the cases cited, as well as those cited in note to *Traders' Nat. Bank v. Rogers* (167 Mass. 315, 45 N. E. 923) 36 L. R. A. 539, and we do not find that they sustain appellant's contention. The cases in which there was held to be a liability were essentially different in their facts from the case at bar, and in most of them, where it was held that there was evidence of ratification or adoption of the forged signature, the ratification or adoption was confined to the signature on the particular instrument involved in the controversy.

While the jury would not have been warranted in finding ratification, waiver, or estoppel on the evidence had the notes been received, we think they were competent on another issue in the case. The plaintiff contended and still contends that the indorsement on the note in suit was genuine, and offered the evidence of two handwriting experts to support his claim, as well as his own and that of Henry G. Goll. We think, in the absence of any showing to the contrary, the presumption is that the four notes referred to were paid by J. W. Skinner if they were forgeries; else how did they come into his possession? Where one induces another to indorse his note and he pays it at maturity, he may of course turn the paid note over to his indorser so that the latter may see that the note has been taken care of. Where, however, one forges an indorsement, but pays the debt, for obvious reasons he will not

allow the note to get into the possession of a third party. If the indorsements on these notes were genuine, we might reasonably expect to find them in the possession of J. W. Skinner, no matter who paid them. If the indorsements were forgeries we would not expect to find them in his possession unless he paid them. If he paid, he might have done so because he actually indorsed them or because he desired to shield his half-brother if they were forgeries. Ordinarily men do not pay paper to which their names are forged. The fact of payment is at least in the nature of an admission that the signature is genuine. The admission may be explained away, but the plaintiff was entitled to have it considered by the jury for what it was worth. It was to some extent corroborative of the other evidence offered tending to show that J. W. Skinner in fact indorsed the note in suit. This court is of the opinion, however, that the evidence tending to show that the name of J. W. Skinner was forged on the note in suit so greatly preponderates over that offered by the plaintiff that the verdict would have been the same had this evidence been admitted, and that therefore its exclusion was not prejudicial error.

3. The appellant insists that the court erred in charging the jury that the burden of proof was on the plaintiff to show the genuineness of the signature by a preponderance of the evidence, and that the court should have charged as requested that the burden was on the estate to show by clear and satisfactory evidence that the signature was a forgery.

It has been held that, where one of the facts essential to a recovery in a civil action also constitutes a crime, the existence of such fact must be proved by clear and satisfactory evidence. *Poertner v. Poertner,* 66 Wis. 644, 29 N. W. 386; *Trzebietowski v. Jereski,* 159 Wis. 190, 149 N. W. 743. The question is: Does this rule apply to the instant case? At common law it was incumbent on a party suing on a note to establish the genuineness of the signature. Under sec. 4192, Stats.,

that proof is furnished by the signed instrument, unless the signature is denied under oath. There was such a denial here. But it is said that the statute does not apply because of Mr. Skinner's death, and that sec. 4193 does apply. Accepting this view as correct, then the possession of the note was presumptive evidence that the same was indorsed by J. W. Skinner. This statute does not relieve the plaintiff of the burden of proof. It simply permits him to make a *prima facie* case in a way in which he could not make it before. It is not accurate to say that the burden of proof has been shifted because a *prima facie* case has been made. Where the plaintiff has the burden of proof at the beginning of a trial it remains with him to the end. When he produced and offered the note in evidence he might have rested, assuming that sec. 4193 applies. But under this statute he had to prove possession, which is now a statutory method of proving the signature. The burden of proof was with him under the statute, as well as it was before the statute was enacted, and hence the instruction given was correct. *Ellis v. Hof*, 123 Wis. 201, 101 N. W. 368; *Heinemann v. Heard*, 62 N. Y. 448; Jones, Ev. (2d ed.) § 177, and cases cited in note 5; 16 Cyc. 934, 935, and cases cited; *Winn v. Itzel*, 125 Wis. 19, 103 N. W. 220; *Ball v. Boston*, 153 Wis. 27, 141 N. W. 8. The meaning of certain language in *Winn v. Itzel* is explained in the *Ball Case*, pages 58, 59. While this explanation occurs in a dissenting opinion, it is in harmony with what the court decided in that case and expressed the view of the entire court on that particular point.

We find no prejudicial error in the record.

*By the Court.*—Judgment affirmed.

SIEBECKER, J. I am unable to concur in the view expressed by the court that the signatures of decedent on the several notes therein referred to as found in decedent's possession and which had been probably paid by him, and were

claimed to be forgeries, are proper evidence tending to show that the signature here in question is genuine. The fact that decedent paid notes given by his half-brother having decedent's signature thereon, but which are alleged to be forgeries, does not seem to me to constitute evidence of the genuineness of the signature in question though there is a similarity between them. To my mind such similarity is simply proof that all the signatures were written by the same party, and leaves the question as to whose handwriting they are an open one. I think the evidence has no probative force and its admission would mislead a jury to give to the signatures the weight of undisputed genuine signatures.

Mr. Justice KERWIN concurs in this view.