ABRAM SAPIRO, Appellant, v. CARRIE RUTLEDGE, Administratrix, Appellee.

**BILLS AND NOTES:** Holder in Due Course—Establishing Defense
1 **Against Payee.** A transcript of the testimony of the payee of a promissory note, tending to show that the delivery of the note to payee was surreptitious and against the will of the maker, is, *for the purpose of showing that the maker had a defense to the note as against the payee,* admissible against an alleged holder in due course, even though such testimony was given in an action solely between the payee and maker.

**BILLS AND NOTES:** Burden of Proof in re Holdership in Due Course.
2 Evidence reviewed, and held wholly insufficient to show that the holder of a promissory note was such for value in due course, without notice.

*Appeal from Webster District Court.*—E. M. McCALL, Judge.

FEBRUARY 9, 1921.

CLAIM filed against the estate of L. S. Coffin, deceased, upon a promissory note for $6,000. The administratrix denied the delivery, and pleaded "no consideration." At the close of the evidence, there was a directed verdict for the defendant. Plaintiff appeals.—*Affirmed*.

*Mitchell & Files* and *Frank Maher,* for appellant.

*Kenyon, Kelleher & Price,* for appellee.

EVANS, C. J.—The plaintiff is an assignee of the note in question, holding the same by assignment from the payee, Mrs. L. S. Coffin. The payee of the note married L. S. Coffin in April, 1908. Coffin was at that time very old. Three weeks

later, the note in suit was made, at a time when Coffin was ill. It was drawn in the ordinary form of a negotiable promissory note. Upon the back thereof was the following indorsement, in the handwriting of the maker:

"The within note is given to protect my wife, Mrs. L. S. Coffin, in case of my decease prior to my making my formal will and disposition of my property. And I bind my heirs, and executors and administrators to a sacred and honest fulfillment of this obligation. Mrs. Coffin does not yield any of her legal right by accepting this note. But should I make other provisions for her in my will, so as to secure to her her lawful rights, then this note shall be counted as so much advanced to her prior to the formal settlement of my estate. Given under my hand this 27th day of April, 1908.

"[Signed] L. S. Coffin."

The marriage soon proved to be an unhappy one, and resulted in a divorce action, brought by the payee against Coffin. The result of the divorce action was a decree of divorce against the payee as plaintiff upon the cross-bill of her husband. The decree was entered in September, 1911, and was reviewed and affirmed in this court. *Coffin v. Coffin,* 155 Iowa 574. For the purpose of showing want of delivery of this note, and that the possession thereof was obtained by the payee surreptitiously, and without the knowledge and against the will of the maker, the defendant put in evidence a literal transcript of the testimony of the payee at the divorce trial, offering the same as in the nature of an admission on her part, while she was still the holder of the note. Being interrogated about the note, she testified at that time as follows:

"Q. Do you remember when that note was made? A. Yes, sir. Q. What time—about what time of the year was it made? A. It was made the latter part of April. Q. Of what year? A. 1908. Q. About a month after you came to the home there, was it? A. About three weeks. Q. It was made for $6,000, payable to you on the death of Mr. Coffin? A. Yes, sir. Q. It was put with his papers in some box there? A. Yes, sir.

Q. You took it from the box, didn't you, later on? A. Yes, sir. Q. About how many months after that, before you took it from the box? A. I don't remember. Q. Would you be able to tell us whether it was in the fall of 1908? A. I think it was after Mrs. Watson went home. Q. What time of the year was Mrs. Watson there? A. In September. Q. Then it would be fair to say that you took it from the box in the fall of 1908? A. I think so. Q. You took it from the box without consulting with him about it? A. Yes, sir. Q. That is, you did not consult with him about it? A. No, sir. Q. After that, after you took it, he discovered you had taken it? A. Yes, sir. Q. But from nothing you had said to him about it? A. No, sir. Q. He found, as you were advised, the condition of the papers different, and told you that he found the paper had been taken? A. He found it out, yes. Q. Why, Mrs. Coffin, didn't you tell him that you were going to take that note from the box? A. Because I didn't want to have one of those scenes that were usual. I was afraid we would have one of those scenes that always happened in conference of that nature. Q. You knew that he would not be pleased with your taking of that note from the box, didn't you? A. I felt that he would not. Q. But you intended to take it anyway? A. Yes, sir. Q. And that was after you had been married to him six or seven months? A. It was after September, yes,—about six months. Q. You still have that note? A. Yes, sir. * * * Q. After he signed the note, what did he do with it? A. He put in a little tin box. Q. His little tin box? A. After I read it. Q. That was his little tin box, too? A. Yes, sir. Q. That was his little tin box, put in his safe? A. Yes, sir. Q. In his safe where he kept the rest of his papers? A. Yes, sir. Q. That was kept there until the time that you took it without his knowledge, four or five months afterwards? A. Yes, sir. Q. Why did you take it without his knowledge then? A. Because I was afraid he would destroy it. Q. You were afraid he would destroy it? A. Yes, sir. Q. You stated this morning that you took it because you were afraid that, if you told him, he would fly into another rage? A. Oh, no, I took it out; yes, sir. Q. You knew he didn't want you to take it out? A. I felt that way. Q. And when he found that you had taken it out, and discovered

it afterwards, he said that you had betrayed him? A. Yes, sir. Q. That was said in the nighttime, when you were in bed together? A. No, sir. Q. He seemed very much dispirited about that? A. Yes, sir. Q. You knew that he was taking it greatly to heart, by what you had done? A. After he explained it, I did. Q. Did you return the note to him? A. No, sir. Q. You knew, from what he said, that he wanted the note? A. I thought so.''

From the same transcript, the plaintiff put in evidence the following:

''Q. Your attention was called to the matter of the $6,000 note. Tell the court what Mr. Coffin said to you about that $6,000 note at the time the note was made. A. He said I had betrayed him. Q. No, I am talking about when he originally gave it to you. A. He had been sick for ten or twelve days, and we were talking one evening, and he said he thought it only proper that he should make some provision for me. We had never talked over financial matters, and I had never had any provision or arrangements to take care of me in case of his early death, and he thought it meet and proper that he should give me a paper which, in an emergency, would take care of the investigation in the settlement of his estate. Q. What did he do after that? Did he give you that note? A. Yes, sir. Q. You have the note? A. Yes, sir. Q. You haven't it with you now, have you? A. No, sir. Q. Is it among your papers in our possession? A. Yes, sir. Q. Referred to as Exhibit A-9, the time that Mr. Coffin put this writing on the back of the note? A. Yes, sir. Q. What did he say about what he would do with the note at that time? A. He made the note, and we talked it over. He said, 'You don't care if I put it in this little tin box?' I said, 'No.' Q. Was there anything else done with it? Anything else between yourself and Mr. Coffin? Was your marriage certificate put there? A. Yes, sir, that was put in the envelope with the marriage certificate. Q. And some time that fall you took them out? A. Yes, sir. I took it some time after this Watson affair.''

I. The plaintiff stipulated that the foregoing transcript was a correct transcript of the testimony of the payee at that trial, and waived proof of identification, but made objection to

1. BILLS AND
NOTES: holder
in due course:
establishing de-
fense against
payee.
the competency of the evidence on the grounds:
(1) That the witness was present in court, and
therefore her deposition would not be admis-
sible; and (2) that a transcript of her testimony
upon a former trial could only be admissible, under the statute,
upon a retrial of the same case, or at least upon the trial of a
case between the same parties. This objection was overruled,
and the first assignment of error by appellant presents the ques-
tion here.

The objection was properly overruled. The admissibility
of this testimony was not dependent upon the statute at all. An
admission against interest, made by Mrs. Coffin while she was
the holder of the note, would be properly provable for the pur-
pose of showing that the maker had a defense to the note as
against her at the time that she held it. Such admission might
be proved by the testimony of any person who heard the admis-
sion made. Where the admission was in the form of testimony
under oath, all taken down literally and preserved and ad-
mitted to be correct, it constitutes evidence of a high order.
True, even then it was not binding upon the plaintiff in the sense
that it could defeat him as a holder in due course. But the
burden was upon the defendant to show a defense as against
the payee, originating in the inception of the transaction, in
order to cast upon the plaintiff the burden of proving that he was
a good-faith holder in due course. An examination of the testi-
mony above set out leaves no room for debate that the possession
of the note was obtained by the payee surreptitiously and against
the will of the maker, and that there never was any intentional
delivery of the note by the maker. This being so, we have no
occasion to consider the question of want of consideration.

II. The only material question remaining is: Was the
plaintiff a holder in due course? It is argued here in his behalf
that he purchased the note in good faith, without notice, and for

2. BILLS AND
NOTES: burden
of proof *in re*
holdership in
due course.
full value. We have been unable to discover
testimony to that effect. He appears to have
been present at the trial. His testimony in
chief was as follows:

"I am the claimant in this cause. The paper marked Ex-
hibit 1 has been in my possession during the last month or year.

I forwarded the same to Mr. Maher for filing a claim. Exhibit 2 is in the handwriting of Mrs. L. S. Coffin. It was signed by Mrs. Coffin in my presence, in connection with Exhibit 1.''

He testified further, on cross-examination, as follows:

''I live in Detroit, Michigan, and have lived there for 25 years. I am an attorney at law. I am neither a broker or loan merchant. My office is at 529 Ford Building, and has been for upwards of five years. I first saw Exhibit 1 in the summer of 1914. It has been in my possession ever since, except when I sent it to Mr. Maher for filing in your court here. Exhibit 2 was never attached to Exhibit 1; it was pinned to it. I did not know, before August 14, 1914, that such a paper was in existence. I read it front and back on August 14th. I have known Mrs. Nellie Coffin since 1902 or 1903. The name was Mrs. Ingalls when I met her. Mrs. Coffin has been a client of mine since 1911. I never met L. S. Coffin.''

If the plaintiff was the holder in due course, he was entitled to recover the amount paid by him therefor, notwithstanding the defect of title of the payee. He did not testify that he paid anything for the note, nor that he had no notice of defenses, nor that he knew nothing of the circumstances under which the note was received. He was content to testify only that he had never seen the note prior to August 14, 1914. He then ''read it front and back.'' He appears to have been an attorney, and the payee had been his client for three years. We see nothing in his evidence that even tends to prove that he was a holder for value in due course without notice. The foregoing testimony which we have set out comprises all the testimony in the record. At the close thereof, each party moved for a directed verdict. The trial court properly overruled the motion of the plaintiff, and as properly sustained the motion of the defendant. Its order is, accordingly,—*Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.