STACY, J., dissenting.
This is an action to recover upon an alleged promissory note of the defendant for $2,500, dated 18 November, 1919, payable to the defendant himself twelve months after date. The defendant denied he had executed said note or had endorsed it, and denied that the plaintiff had purchased it for full value before maturity and was the owner of the same. He also denied that he had made payments upon it or was indebted thereon to plaintiff as alleged. He alleged that the said paper-writing was fraudulent and void and was without consideration, and denied that the plaintiff was a bona fide
owner and holder for full value and without notice. He alleged that certain agents of the Cumberland Railway and Power Company, in November, 1919, came to his home, near Cardenas, N.C. and solicited him to purchase certain stock and bonds of said company, and, in connection therewith, made to him many false and fraudulent representations, specifically set out in the answer, representing that said company was a strong corporation, abundantly solvent, and in prosperous financial condition, all of which was false; and that it owned certain specific properties which it did not own, and that its bonds were extremely valuable, which was not true; that the said company was worth a million dollars, etc.; that the said *Page 298 
agents of the Cumberland Railway professed to read over to him a paper utterly different from the alleged note, and by their false representations obtained his signature to a paper-writing totally different from the alleged note, and which said paper-writing they read falsely to him as not maturing until forty years after date, and being payable to the Cumberland Railway and Power Company; that the defendant could not read or write, and relied upon the representations made to him by said agents; that the same were material, false, and calculated and intended to deceive him, and did deceive him, and that the transaction was fraudulent and void. He further alleged that the paper-writing or note was procured contrary to and in violation of the laws of North Carolina; that it came within the provisions of C. S., 6367, and chapter 156, Public Laws 1913, and chapter 121, Public Laws 1919, known as the "Blue-Sky Law," and that there was no contract in writing executed containing the clause required by said statutes. He alleged that neither the name of the Cumberland Railway and Power Company nor of the said agents appeared in the said pretended note, as required by law, and that the said writing was fraudulent and void and contrary to the laws of North Carolina, and part of an illegal and forbidden transaction. He further alleged that the plaintiff had knowledge of the fraudulent character of the transaction of the Cumberland Railway and Power Company, and that the defendant had, prior to plaintiff's acquisition of the paper-writing in controversy, notified the plaintiff that the defendant disputed the validity of the same and the grounds thereof. The further and fuller allegations of the defendant appear in the answer, as set forth in pages 4-12 of the record.
There was a verdict in favor of the plaintiff, and the defendant appealed.
The defense set up by the defendant is that the note sued on was procured by false and fraudulent representation and by disregard of the requirements of the "Blue-Sky Law," and the defendant offered evidence to show that the plaintiff bank in this case acquired about the same time $15,000 or $20,000 of similar paper held by the Cumberland Railway and Power Company, and that it had knowledge of the defects alleged.
There are numerous other exceptions assigned as error, but it is unnecessary to do more than to mention the following evidence, which was excluded and its exclusion excepted to by the defendant, which was *Page 299 
offered to show knowledge on the part of the bank, and especially that the bank had acquired a note executed by A. W. Thompson to the Cumberland Railway and Power Company; that said Thompson was, and had been for many years, one of the directors of plaintiff bank, and offered evidence to show that said Thompson acquainted the cashier of the bank with the said fraudulent practices by which this paper in question was procured, and that after some controversy the bank returned said paper to Thompson. It is true that the cashier testified that Thompson paid the paper, but there was also evidence offered that he had acquainted the cashier with the defects, and that the paper was returned to him by the cashier canceled and without payment.
C. S., 3040, provides: "When it is shown that the title of any person who had negotiated the instrument was defective, the burden is on the holder that he, or some person under whom he claims, acquired the title from the holder in due course." There are numerous cases which hold: "Upon proof of fraud or illegality being offered, burden is shifted to holder, and he must show that he received the instrument bona fide and for value."Discount Co. v. Baker, 176 N.C. 546; Moon v. Simpson, 170 N.C. 335;Wilson v. Lewis, ib., 47; Smathers v. Hotel Co., 168 N.C. 69; Bank v.Drug Co., 166 N.C. 99; Bank v. Branson, 165 N.C. 344; Trust Co. v.Whitehead, ib., 74; Trust Co. v. Ellen, 163 N.C. 45; Bank v. Exum, ib., 199; Hardy v. Mitchell, 161 N.C. 351; S. c., 156 N.C. 76; Myers v.Petty, 153 N.C. 462; and many others. Where evidence establishes the title of party who negotiated a check to defendant was defective, burden is upon the defendant claiming to be bona fide purchaser, for value and without notice, to make good claim by greater weight of the evidence. Mfg.Co. v. Summers, 143 N.C. 103. Also, where the complaint in an action by endorsee of instrument does not state that he is holder in due course, and defendant alleges that the execution of instrument was procured by fraud of payee, burden is on endorsee to show that he is the holder in due course.Campbell v. Patton, 113 N.C. 481.
The evidence offered by defendant for the above purpose, and excluded, is as follows:
Mr. F. W. Kurfees, cashier of the plaintiff bank, testified: "We had bought other notes of the Cumberland Railway and Power Company at the time we bought this. I could not tell you how long we had been doing this. I cannot say. We had bought some stocks or bonds with the Cumberland Railway and Power Company in connection with this matter. They were delivered with the note, or soon afterwards, by the stock salesman. I could not say whether Mr. Sherron brought them in or not. I think that the stock salesman brought them in because I *Page 300 
requested him to bring them in as soon as they were issued. I knew that they were connected with the note. I knew that this was the note given for the purchase of bonds or certificates of the Cumberland Railway and Power Company, as he told me he had sold some stock. That was at the time he was offering us this note for sale. The stock certificate that I mentioned while ago was stock certificate of the Cumberland Railway and Power Company which we had in our possession."
Said Kurfees also testified that they took $15,000 or $20,000 of the notes held by the Cumberland Railway and Power Company. He said he did not take the note of A. W. Thompson and turn it back on him; that said A. W. Thompson was a director of his bank. Question: "I ask you if he did not tell you that it was not a bona fide note?" To this the plaintiff objected, which objection was sustained, and the defendant excepted. This is exception 8. The defendant proposed to show that the said Thompson did have a controversy with the bank about some of this Cumberland Railway and Power Company paper.
Kurfees, the cashier, stated that Thompson was a director of the bank from the time it started business in 1914 until 1921. Question: "He had a controversy with your bank about some of this Cumberland Railway and Power Company paper?" The plaintiff objected; sustained, and the defendant excepted. This was the ninth exception.
The defendant Sherron testified that when the Cumberland Railway and Power Company got him to sign the note in question, they read it over to him, and a few days thereafter Kurfees, the cashier of the bank, said, "Mr. Sherron, I will handle some of your paper if you say so," and he replied that he had forty years and that the dividends would pay that off. "I told him they got it through fraud, and that it was not recommended to me like it was. I did not agree that Mr. Kurfees should buy that paper. He mentioned to me about paying the interest, and I told him he would have to get it out of the dividend; that I had forty years on it." When Sherron was asked about the statements made to him by the Cumberland Railway and Power Company's agent — "You found out that it was all to the bad?" — objection by plaintiff; sustained, and defendant excepted. This was the seventeenth exception.
Sherron testified that there was nothing in any contract between him and the Cumberland Railway and Power Company containing the language required by the statute, C. S., 6367: "No sum shall be used for commission, promotion, and organization expenses on account of any shares of stock in this company in excess of one per cent of the amount actually paid upon separate subscriptions (or in lieu thereof may be inserted, or one dollar per share for every fully paid subscription) for such securities, and the remainder of such securities shall be held or invested as authorized by the law governing such company and held by *Page 301 
the organizers (or trustees, as the case may be) and the directors and officers of such company after organization, as bailee for the subscriber, to be used only in the conduct of the business of such company after having been licensed and authorized therefor by proper authority."
He said he knew Mr. A. W. Thompson, and that he was a director of defendant bank. When asked the question, "Was he assisting in the selling of the stock of the Cumberland Railway and Power Company?" the plaintiff objected; sustained, and defendant excepted. This was the eighteenth exception. The defendant proposed by this question to show that A. W. Thompson, one of the directors of plaintiff bank, was assisting in the sale of this stock of the Cumberland Company.
The court informed counsel that it could ask the witness if Thompson sold him any stock. He asked, "Mr. Sherron, did you hear any conversation between Mr. A. W. Thompson, director of the Bank of Varina, and any person concerning the alleged note of A. W. Thompson claimed to have been given to the Cumberland Railway and Power Company?" Objection by the plaintiff; sustained, and defendant excepted. This was the nineteenth exception.
The defendant then asked, "State if you know whether or not the plaintiff, Bank of Varina, claimed to hold the note of A. W. Thompson acquired by said bank of the Cumberland Railway and Power Company, the authenticity of which was disputed by Mr. Thompson." Objection by plaintiff; sustained, and defendant excepted. This was the twentieth exception. The defendant proposed to show by this witness that it did.
Question: "State if you know whether or not the Bank of Varina surrendered to Mr. A. W. Thompson a note similar to the one in controversy, claimed to have been signed by Mr. Thompson and disputed by him." Objection by plaintiff; sustained, and defendant excepted. This was the twenty-first exception. The defendant proposed to show by this inquiry that the said bank did surrender to A. W. Thompson such note.
The defendant also excepted for refusal to admit divers witnesses to testify that stock salesmen made to them the same false and fraudulent representations concerning said Cumberland Railway and Power Company and its stock in order to procure signature to notes similar to the false representation made to Sherron, and to prove by them further that such representations were false and fraudulent. All of these exclusions of testimony were duly excepted to, and assigned as error.
There were other exceptions, for which error is assigned, but, in view of the above assignments, it is not necessary to discuss them.
The case should go back, that this excluded evidence may be admitted and be passed upon by a jury.
New trial. *Page 302