# CHARLESTON.

MERCHANTS BANK AND TRUST COMPANY v. PEOPLES BANK

(No. 5121)

Submitted May 20, 1925.　Decided June 2, 1925.

1. BILLS AND NOTES—*Cancellation of Words on Certificate of Deposit Held Not to Show Prima Facie on Face Alteration After Delivery to Payee, Giving Notice of Infirmity to Purchaser in Due Course.*

The fact that a certificate of deposit, prepared on a printed form by the use of a typewriter, shows on its face that the words "if left", relating to the interest rate on the printed form, were "X'ed" out, evidently by the same machine, does not prima facie show on its face that the alteration was made after delivery to the payee, so as to give notice to a purchaser in due course of any infirmity in the instrument. (p. 547).

2. SAME—*Possession of Instrument Sued on and Offer of it in Evidence Constitutes Prima Facie Evidence That Plaintiff is Holder in Due Course, in Absence of Plea of Non Est Factum or its Equivalent.*

Without the plea of non est factum or its equivalent putting in issue the validity of the instrument sued on, possession thereof and the offer of it in evidence constitutes prima facie evidence that the plaintiff is the holder in due course without notice of anything impeaching its validity. (p. 551).

3. ALTERATION OF INSTRUMENT—*Alteration of Negotiable Instrument, Apparently Made at Time of Preparation, Does Not Constitute Prima Facie Evidence of Alteration After Delivery.*

It is not the law of this State that an alteration in a negotiable instrument, which was apparently made at the time and by the same hand or instrument used in the preparation thereof, constitutes prima facie evidence that it was altered after delivery. (p. 549).

4. BILLS AND NOTES—*Certificate of Deposit in Usual Form, Issued by Bank of Discount and Deposit, is, in legal Effect, Promissory Note.*

A certificate of deposit in the usual form issued by a bank of discount and deposit is in legal effect a promissory note and constitutes a negotiable instrument the purchaser of which in due course is protected by the provisions of the statute relating thereto. (p. 550).

5.  SAME—*Evidence Held Insufficient to Show That Holder of
    Certificate of Deposit Was Purchaser in Due Course for
    Value and Without Notice of Fraud; on Failure of Plain-
    tiff Suing on Fraudulent Certificate of Deposit to Show
    That it Was Purchaser in Due Course for Value and With-
    out Notice of Fraud, Court Should Find for Defendant.*

    Where it is shown that a certificate of deposit was fraudu-
    lently issued by the cashier of a bank, and the evidence
    tends to show that others through whose hands it passed
    before reaching plaintiff, a bank claiming to be a purchaser
    in due course, were parties to the fraudulent transaction
    and gave no value therefor and were ready to and did sur-
    render to the bank purporting to have issued the same a
    number of like certificates issued at the same time, and the
    evidence tends to show that the reputation of the immediate
    endorser of the one sued on by plaintiff was not good, of
    which fact plaintiff's officers who purchased the paper had
    some notice but made no inquiry of the bank of issue respect-
    ing the same, by wire or otherwise, as might easily have
    been done, and plaintiff fails to produce as a witness the
    officer who purchased the paper, to show the bona fides of
    the transaction, and it does not otherwise fully appear, it
    has failed to sustain the burden of proof cast upon it of
    showing that it was a purchaser in due course for value
    and without notice of the fraudulent character of the in-
    strument, and on the submission of the case to the court in
    lieu of a jury the court should find for the defendant and
    give judgment accordingly.    (p. 553).

6.  SAME—*Required Proof by Party Suing on Fraudulently
    Issued Certificate of Deposit Stated.*

    When the burden of proof has been shifted to the holder
    of an instrument, the mere possession thereof, though ac-
    companied by proof that he acquired it before maturity and
    paid value therefor, will not be sufficient.  To entitle him to
    recover he must further prove the circumstances under
    which he acquired the paper and show facts constituting the
    good faith required.    (p. 556).

7.  BANKS AND BANKING—*Causing Memorandum of Fraudulent
    Certificates of Deposit to be Made on Ledger With no In-
    tention of Ratifying Them Held Not Ratification in Favor
    of Purchaser of Certificate.*

    The mere fact that the directors of a bank, after discov-
    ering the facts relating to the fraudulent issue by its cashier
    of certificates of deposit for a very large amount, and of
    which no record was made by him, causes a memorandum of

such certificates of deposit to be made on the ledger, but with no intention of ratifying the fraudulent transaction, will not be treated as a ratification thereof in favor of the purchaser of one of such certificates prior thereto, and who was unaffected thereby.  (p. 558).

8.  FORGERY—*Issuing of Fraudulent Certificates of Deposit by Bank Cashier Held Forgery, Although Note Secured by Valueless Stock Was Taken Therefor.*

The cashier of a bank who, without authority of or notice to the directors, and with fraudulent intent, issues and delivers to another, conspiring with him and who has made no deposit of money, certificates of deposit aggregating a very large amount, is guilty of forgery, though the purported depositor issues and delivers to the cashier his worthless note and pledges therewith bonds of a corporation of little or no value, and of which transaction the cashier makes no record on the books of the bank.   (p. 559).

9.  BANKS AND BANKING—*Forged Certificates of Bank Deposit Cannot be Made Subject of Ratification by Directors; Bank is Not Precluded From Setting up Defense of Forgery Against Certificates of Deposit by Fact That They Were Forged by Cashier.*

Certificates of deposit so fraudulently issued and constituting a forgery thereof by the cashier, can not be made the subject of ratification by the directors of the bank; and unless the bank is in some way estopped by acts prejudicial to the holder of such paper, the bank is not precluded from the defense of forgery.   (p. 562).

10.  BILLS AND NOTES—*Forgery and Want of Authority to Make Instrument Sued on May be Set up Under General Issue of Non Assumpsit.*

The defense of forgery and want of authority to make the instrument sued on, may be made under the general issue of non assumpsit.   (p. 567).

Error to Circuit Court, Mineral County.

Action by notice of motion for judgment by the Merchants' Bank & Trust Company against the People's Bank of Keyser. Judgment for plaintiff and defendant brings error.

*Reversed; judgment entered for defendant.*

*Taylor Morrison* and *Charles N. Finnell,* for plaintiff in error.

*Ira E. Robinson, R. A. Welch,* and *Abner H. Ferguson,* for defendant in error.

MILLER, JUDGE:

This is an action begun in the circuit court by notice of motion for judgment on a certificate of deposit, as follows:

"Peoples Bank of Keyser,
Keyser, W. Va., March 18, 1922.
"No. 338.
Adolph Segal has deposited in this Bank Five Thousand & No-100 Dollars, payable to the order of himself with interest at 3 per cent, per annum for Six Months on return of this certificate properly endorsed.
Not subject to check.
$5,000.00                    T. D. Leps, Cashier."
Endorsed as follows:
"Adolph Segal,
S. M. Smith,
Merchants Bank & Trust Company."

The notice of said motion averred the purchase of said certificate by plaintiff before maturity, in due course, and for value received. And the usual statutory affidavit was attached thereto. The only plea by defendant was non assumpsit, on which issue was joined. A jury was waived, and the case submitted to the court in lieu of a jury.

After proving by the president of defendant bank that Leps at the date of the certificate of deposit sued on was cashier of his bank and that his signature thereto as such was genuine, plaintiff introduced as a witness Edwin W. Popkins, its treasurer, and over defendant's objection was allowed to prove by him that plaintiff was owner of the certificate of deposit sued on, and that it had been purchased in due course, for value, at the price of $4,800.00; over like objection and exception the certificate of deposit was admitted in evidence; and this action of the court is the first point of error relied on for reversal.

In support of this point, it is urged by defendant's counsel that the paper on its face bore such evidence of its infirmity as to call upon plaintiff for affirmative proof of its validity,

and to account for its supposed defects, as a condition of its reception in evidence. When offered the paper showed that it had been prepared on a printed form used by the defendant and that the parts of the instrument written in had been inserted on a typewriter. It also-showed that the words "if left" between the words "per annum" and "for Six Months" in the printed part had been "X'ed" out, manifestly by the same machine, and the defendant's contention is that the "X'ing" out of these words constituted prima facie evidence of a material alteration of the paper after its delivery to the payee, and that until shown to have been in fact altered before delivery the paper was inadmissible.

As already indicated, there was no plea of *non est factum*, or any other plea putting in issue the validity of the instrument, and as plaintiff proved before introducing it in evidence, that the signature thereto was that of the cashier of defendant, this was sufficient to admit it unless it carried on its face evidence of a material alteration after it was delivered. Do the "X'ed" out words show this? We do not think so. The alteration was evidently made by the same machine used in preparing the instrument, and this change of itself constituted no suspicious fact or circumstance putting the purchaser on notice of a subsequent alteration or of any other infirmity in the instrument.

Adopting the view of some courts that any alteration in a deed or other written instrument constitutes prima facie evidence that it was altered after delivery, defendant's counsel argue the inadmissibility of this paper until this presumption was overcome by evidence. Conceding their major premise, of course, their conclusion would follow; but we do not think the proposition is sustained, either by reason or the weight of authority. Three prior decisions of this court are cited and relied on to sustain the proposition, namely, *Conner* v. *Fleshman*, 4 W. Va. 693; *Piercy's Heirs* v. *Piercy, Ex'or*, 5 W. Va. 199; and *Carey Mfg. Co.* v. *Watson*, 58 W. Va. 189. In the first case there was a plea of *non est factum*, which under the statute put the plaintiff on proof of the genuineness of the instrument. But even there the court held that the instrument in question was properly admitted in evidence, it being for the jury to say whether the alteration

had been made after delivery, vitiating it. The second case was in equity. The bill stated that the note sued on was filed in a mutilated condition, and the answer of one of the defendants alleged that the note had been discharged and that plaintiff had obtained it fraudulently. On this state of the pleadings the court properly held that it devolved upon plaintiff to account for the alteration appearing on the face of the instrument. In the last case cited it was clearly shown in evidence that the instrument sued on had been altered after delivery, and this fact being shown clearly, the question of the materiality of the alteration upon its admission in evidence was held to be a question of law for the court and not one of fact for the jury, and that the burden was upon the plaintiff to show that it was changed under circumstances rendering it lawful.

There is nothing on the face of the certificate of deposit here involved evincing that it was altered after delivery. The law is that where the pleadings allege that the instrument sued on was made and delivered by defendant, and there is no pleading putting this fact in issue, the defendant is not permitted to show that it was altered after it was made and delivered. *Archer* v. *Ward*, 9 Gratt. 622. And where the instrument is declared on in its original condition the defense of alteration should be specially pleaded. 1 R. C. L. 1048, sec. 86.

The proposition supported by some decisions, that every alteration in an instrument is presumed to have been made after delivery seems to us opposed to sound reason, and certainly so when applied to an instrument otherwise regular on its face, except that some of the words on the printed form have been stricken out. Such a rule would almost prevent the use of printed forms so much in use in commerce, and require that every instrument which is in printed or written form should be absolutely perfect if the parties would escape the perils of the law; it would be harsh and necessarily burdensome. It is opposed to the salutory rule that the law never presumes a fraud. Unless an alteration is suspicious in character and such as to furnish intrinsic evidence of a subsequent alteration, it should be regarded as a legitimate

part of the instrument. *Wolferman* v. *Bell,* 32 Pac. 1017; *Beaman* v. *Russell,* 49 Am. Dec. 775; *Wilson* v. *Hayes,* 42 N. W. 467; *Tharp* v. *Jamison,* 39 L. R. A. (N. S.) 100, and note; 1 R. C. L. 1042, sec. 75. To justify the exclusion of the instrument sued on in this case without pleading putting the fact of its validity in issue there should have been something on the face of it showing its alteration after delivery; the mere alteration of the printed words in a blank form by the same instrument used in its preparation would not justify its exclusion.

The next proposition of defense is that the instrument is not a negotiable instrument and is subject in the hands of the plaintiff bank to all intervening equities between the parties and their privies. It being conceded that the certificate of deposit was fraudulently executed and that defendant got no consideration therefor, this question becomes all important.

Three comparatively recent decisions of this court hold that certificates of deposit like the one involved here are negotiable instruments although the promise to pay be not in express words. *Bank* v. *Bryan,* 72 W. Va. 29; *Benedum* v. *Bank,* Id. 124; *Pomeroy Nat. Bank* v. *Huntington Nat. Bank,* Id. 534. But it is said these decisions were under section 7, chapter 99, Code, 1906, and did not involve the construction of the present negotiable instruments law of 1907, section 1, chapter 98-A, Code, 1923, which provides as follows:

> "An instrument to be negotiable must conform to the following requirements: (1) It must be in writing and signed by the maker or drawer; (2) must contain an unconditional promise or order to pay a sum certain in money; (3) must be payable on demand or a' fixed or determinable future time; (4) must be payable to order of a specified person or to bearer."

The proposition advanced by counsel is that the certificate of deposit here in question does not comply with the second requirement of the present statute, in that it does not contain an unconditional promise or order to pay a sum certain

in money. In the Pomeroy National Bank case, we decided that in legal effect a certificate of deposit is a promissory note, notwithstanding the lack of a promise in express words. If the instrument sued on is such an instrument, does it not also answer the requirement of an unconditional promise or order to pay a sum certain in money? It is payable by its terms to the order of the depositor with interest at three. per centum per annum for six months, and no longer unless then extended, thereby fixing a definite time for payment; and it seems to us to comply with the third requirement of the statute to render it negotiable, namely, that it "must be payable on demand or a fixed or determinable future time". Section 10 of the statute itself says: "The negotiable instrument need not follow the language of this act, but any terms are sufficient which clearly indicate an intention to conform to the requirements thereof." An unqualified order or promise to pay is unconditional within the meaning of this act, though coupled with an indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount, or a statement of the transaction which gives rise to the instrument. 2 Dan. Neg. Inst., Appendix, page 2022; 5 Uniform Laws Anno. 36, section 2, and note. Properly construed as a promissory note the certificate of deposit imports a promise by the defendant to repay to Adolph Segal or order the sum of Five Thousand Dollars deposited, with interest at three per cent per annum for six months, on return of the certificate properly endorsed, an unconditional promise. There can be no question, we think, about the negotiability of the instrument.

The next proposition relied on by defendant is that plaintiff is not a holder in due course and without notice of the fraud practiced upon the defendant. The record shows that the instrument sued on is one of a series, amounting in all to $105,000.00, payable to Segal, and delivered, not to Segal, but to one Robert A. McDougal, not at the banking house of defendant in West Virginia, but at the Queen City Hotel in Cumberland, Maryland; that the transaction was a private and secret one between Leps and Segal or McDougal, and

one of which no record was made on the books of the bank; that at the time of the transaction Leps took from McDougal Segal's notes aggregating $100,000.00, and as collateral thereto bonds of the Wilmington Sugar Refining Company of the nominal value of $200,000.00, which he lodged somewhere in the vaults of the bank. While Leps in his deposition describes them as mortgage bonds, it seems to be conceded that they had very little, if any, value. That they had not is given color by the character of the transaction. No attempt was made to show that they had or have any substantial value, at any time.

To be protected as a holder in due course the purchaser of the instrument must take it under the following conditions: "(1) That the instrument is complete and regular on its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Section 52, chapter 98-A, Code, 1923.

And section 56 of the same chapter says that: "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Mere knowledge of facts sufficient to create suspicion, without actual knowledge, will not deprive one of the rights of a purchaser in due course, but if the facts, circumstances and conditions attending the purchase are so cogent and obvious that to remain passive amounts to bad faith on his part and show bad faith on the part of the seller, the purchaser will be deprived of the status of a holder in due course. *Marion National Bank* v. *Harden,* 83 W. Va. 119; *Arnd* v. *Heckert,* 108 Md. 300. We have decided that there was nothing on the face of the certificate showing any irregularity in the issuance thereof; wherefore the plaintiff was entitled to the presumption that it was a holder in due course; for the mere

possession of a negotiable instrument produced in evidence by the endorsee, or the assignee when no endorsement is necessary, imports prima facie that he acquired it bona fide for full value in the usual course of business, before maturity and without notice of any circumstances impeaching its validity. 1 Daniel's Negotiable Inst. (6th ed.), sec. 812; *Bank v. Johns,* 22 W. Va. 520.

Another question of prime importance is, did the plaintiff at the time of its alleged purchase of the certificate of deposit have notice of any facts or circumstances impeaching the validity of the instrument? The facts established by the competent evidence and on which defendant relies as showing notice to plaintiff of the invalidity of the instrument are as follows: First, that S. M. Smith, its immediate endorser, offered to sell the paper, bearing three per cent interest from date, and with only about five months to run, at a discount of $200.00 and the interest, when if valid and being in the form of a certificate of deposit of money, he could undoubtedly have secured better terms from the bank issuing it, and plaintiff could have been advised fully by telegram or telephone to the apparent maker in Keyser; Second, that Smith, the immediate endorser, was a comparative stranger, and that plaintiff, through its treasurer and witness Popkins, had at least some little knowledge of the bad reputation of Smith. Popkins did not personally conduct the transaction with Smith, but was present; Mr. Ezra Gould, its then vice-president, did. He is not now connected with the plaintiff and was not called as a witness. Popkins was asked: "Mr. Popkins, do you know anything about the reputation of S. M. Smith down there in Washington?" A. "I do now." Q. "Did you then?" A. "Not so very much, no, sir." His testimony thus evidences some knowledge of Smith's reputation, which he tacitly admits is now bad. Counsel and witness must have understood that Smith's reputation for honesty and fair dealing was the subject of the inquiry; Third, that contrary to what is alleged in the declaration and proved by Popkins, plaintiff in a suit brought by it in Washington, D. C., against said Smith and the Massachusetts Bonding Company, on a bond of indemnity against the insolvency or

suspension of defendant, the record of which was rejected as evidence in the court below, but which we hold competent, alleged that its immediate endorser was H. W. Van Senden, who had purchased said certificate from Smith on April 12, 1922, and that Van Senden had required of Smith the said bond of indemnity, and that plaintiff had purchased said certificate of deposit from Van Senden on condition of his assigning to it all his right, title and interest in and to said bond, which he did, on or about April 14, 1922, and that this declaration was accompanied by an affidavit of merit of the said Ezra Gould alleging the same facts; Fourth, that said Gould, the vice-president, who is shown to have had the transaction with Smith, was not called as a witness to testify for plaintiff in the case, and whose absence was in no way accounted for, and that because of his absence, it must be presumed if he had been summoned and given his evidence, it would have been against plaintiff's contention that it had acquired said paper in due course and without notice of the fraud practiced on defendant.

The record shows that Leps issued and delivered the certificates of deposit to McDougal, Segal's agent, in Maryland, and that Segal put them in the hands of West, of Philadelphia, and that Smith got them from West, one of which he disposed of, either to Van Senden or to plaintiff through Van Senden. When the fraud was discovered by defendant, West was quite ready to surrender seven of them still in his hands, to Segal, and Segal to the defendant.

That all of the actors down to and including Smith had engaged in a scheme to defraud the defendant is most certain. Van Senden had probably discovered this, or at least had become suspicious; and after the indemnity bond was received by him from Smith, he declined the deal and turned it over to Gould for the plaintiff. So that it appears that Gould was a most important witness for plaintiff to show the bona fides of the transaction with Smith, and plaintiff's notice or want of notice of the fraud affecting defendant's rights. Rules of evidence well established by our decisions and applicable to the facts here disclosed declare that, "When a party to a controversy fails to examine a material witness

in his behalf, it will be presumed that the evidence of such witness, if given, would be adverse to such party." *Nichols v. Camden &c Ry. Co.,* 62 W. Va. 409, point 2, syllabus. "If a party have it in his power to present a fact necessary or beneficial to his case, his failure to present it is taken as conclusive of the non-existence of such fact." *Despard* v. *Pearcy,* 65 W. Va. 140, point 4. And, again: "If a party to an action has available competent proof to establish a fact necessary and material to his success and fails to produce it, the legal presumption is that if produced the proof would not sustain his claim for relief." *Kinder* v. *Boomer C. & C. Co.,* 82 W. Va. 32, point 14. Popkins swears in relation to the transaction between Gould and Smith, that he does not know whether prior to the time he was present, Gould and Smith had any other conversation about the purchase of the certificate of deposit; nor does he know whether they ever prior to that time had any conversations with Van Senden regarding the certificate. So that for anything appearing in the record Gould may have been a party to the fraudulent transaction, the circumstances of which strongly indicate that others than Leps were actively engaged thereon. If so, the plaintiff could not be regarded as an innocent purchaser in due course and without notice, nor entitled to recover in this action. Not having produced Gould, the presumption is against the honesty of his transaction with Smith. Moreover Smith was not produced as a witness to show the good faith and fair dealing between him and plaintiff or Van Senden. McDougal, Segal and West, through whose hands the paper passed, were undoubtedly parties to the fraudulent issue of the paper. None of them were bona fide purchasers in good faith. Plaintiff made no pretense of showing prior good title through them.

Wherefore, we are of opinion that the plaintiff has not shown by sufficient and competent evidence that it purchased the paper sued on in due course and for value without notice of the fraudulent origin and subsequent dealings with the paper; and that the judgment below on the issues joined ought to be reversed.

*On rehearing:*

Objection is made for the first time that the certificate of the evidence contained in the printed record is not so identified as to become a part of the record, and not properly to be considered on this hearing. The defects pointed out by counsel have been corrected by an exhibition of the original record from the circuit court; and we will give this point no further consideration.

The proposition is again urged that the facts established in connection with the alleged purchase of the certificate of deposit sued on, if true, were not sufficient to put plaintiff on notice of the fraud or infirmity in the title of prior holders so as to deprive it of the status of a purchaser in due course. If we could accept this as a correct view of the evidence, the plaintiff is confronted with the proposition interposed by defendant, namely, that there was fraud in the issue of the paper, that it was not in fact a legitimate banking transaction, indeed not a transaction by the bank at all; and this being the case, the burden was cast upon plaintiff to show the good faith and bona fides of the purchase of the paper by its agent; and that it was not sufficient for it, as counsel urge, simply to show that the paper was offered by Smith and purchased by Gould, vice-president, for the consideration shown. It is no doubt true that facts which are calculated only to arouse suspicion, will not be sufficient to deprive one of the status of a purchaser in due course. *Swift* v. *Smith,* 102 U. S. 442; *Bank* v. *Stover,* (New Mex.), 155 Pac. 905; *Bank* v. *Ohio Valley Furniture Co.,* 57 W. Va. 625. But in this case we have the fact that Gould, the main actor in the case for plaintiff, is absent. What do we know about his knowledge of the fraud practiced on the bank? Practically nothing. Can the court shut its eyes to this fact in a transaction of this character? Would it not be a dangerous precedent to establish, that a mere bystander, though an employee of the same institution, without any information as to the prior knowledge or connection of the officer in charge, if any, with the fraudulent transaction, should be allowed to substitute for and excuse the absence of the only witness who could give full information? Counsel for plaintiff in error,

with considerable diligence, have brought to our attention
many judicial decisions on the important question of the bur-
den of proof in cases of this kind. Some of them say that
when the burden has shifted to the holder of the instrument,
the mere possession thereof, though properly endorsed, will
not be sufficient to sustain the burden, and unless evidence
of the bona fides of the purchase is forthcoming, the holder
can not recover. *O'Conner* v. *Kleiman,* 143 Iowa 435, 121
N. W. 1088; *Ford* v. *Ott,* 186 Iowa, 820, 173 N. W. 121;
*Ireland* v. *Shore,* 91 Kans. 326, 137 Pac. 926; *Hill* v. *Dillon,*
176 Mo. App. 192, 161 S. W. 881; *Heath* v. *Heath,* 175 N. C.
457, 95 S. E. 916; *Holdsworth* v. *Blyth & Fargo Co.,* 23 Wyo.
52, 146 Pac. 603. And the effect of this shift is to make it
incumbent on the holder to prove the circumstances under
which he acquired the instrument on which he seeks to re-
cover. *Edelen* v. *First National Bank,* 139 Md. 599. In
Washington it was decided that the holder to whom the bur-
den has shifted must show facts constituting the good faith
required. *Keene* v. *Behan,* 40 Wash. 505, 82 Pac. 884. The
absence of notice of defenses must be shown by proof. So
say numerous decisions. *Sapiro* v. *Rutledge,* 190 Iowa, 1032,
181 N. W. 257; *Ireland* v. *Shore, supra; Owsley* v. *County
Deposit Bank,* (Ky.), 244 S. E. 755; *Fox* v. *Cortner,* 145
Tenn. 482. The mere fact that a holder bought a note be-
fore due and paid value for it, was held not of itself a show-
ing of good faith. *Connelly* v. *Greenfield Sav. Bank,* 192
Iowa, 876, 185 N. W. 887.

Our statute, section 59, chapter 98-A, Code 1923, provides
that when it is shown that the title of any person who has
negotiated the instrument was defective the burden is shifted
to the holder to prove that he or some person under whom
he claims acquired title as a holder in due course. And in
addition to the statute, we refer to cases cited by counsel,
holding that proof of fraud in the procurement of the instru-
ment shifts the burden of proof to the holder. *Arnett* v.
*Sanderson,* (Ariz.), 218 Pac. 986; *Wright* v. *Spencer,* (Ida.),
226 Pac. 173; *Varney* v. *Nat. City Bank,* (Ind.), 139 N. E.
326; *Bank of Varena* v. *Sherron,* (N. C.), 119 S. E. 497;

*Voss* v. *Smith,* (Okla.), 224 Pac. 328; *Howard Nat. Bank* v. *Wilson,* (Vt.), 120 Atl. 889.

But counsel for plaintiff interpose the proposition that, assuming the alleged fraud in the inception of the paper, and of those subsequently dealing with it, the defendant, after knowing all the facts, ratified the transaction by adopting it and taking the benefits thereof. For this proposition they rely: first, on the facts shown in evidence, that after discovering the fraud, there was entered on the bank's ledger sheet the following relating to the certificate of deposit involved:

"Sheet No. 1

NAME—CERTIFICATES OF DEPOSIT

| Old Balance | Date | Balance Brought Forward |
|---|---|---|
| 105,000.00 | Apr. 14 | Nos. 330 to 350 Inc. |
| | | 10,000.00    10,000.00 |

| Date | Deposits | Date | New Balance |
|---|---|---|---|
| Mar. 20 | 105,000.00 | Mar. 20 | 105,000.00 |
| Apr. 14 | | Apr. 14 | 85,000.00" |

and, second, that two certificates were paid by the bank after knowledge of the circumstances under which they were issued. Of course it is not contended that the supposed ratification was made before the plaintiff claims to have purchased the certificate sued on, or that it was in any way misled or affected injuriously thereby. The evidence of Workman, assistant cashier of the defendant bank, and Babb, president, shows that the bank did not open an account with Segal, made no record of any loan to him, but simply caused a memorandum of the certificates of deposit to be made on the ledger so that the bank might have such a record, without intending thereby to admit any liability of the bank for the payment of the paper. Babb explains that the two $10,000.00 certificates presented for payment and paid after his return from Philadelphia and Washington, were not of the same issue as the one sued on and dated March 18, 1922. The two for $10,000.00, each of which was paid, were dated December 30, 1921. And Babb says that he was induced by Segal's promise in Philadelphia to send the money to the bank to take

care of the outstanding certificates, to pay the two so presented as being probably for the best interests of the bank and with the hope of keeping the bank open and saving it from ruin. The position of counsel for plaintiff is that the first duty of the defendant on discovery of the fraud was to have rescinded the transaction and returned to Segal his note and bonds. As the transaction between Leps and Segal was not in law a transaction with the bank, nor treated as such by Leps at least, and was a gross abuse by both Leps and Segal of the rights of the bank, how could the bank be called upon to do anything except to hold in its possession the note and bonds until they could be legally disposed of? To whom should it have delivered Segal's note and bonds?

Opposed to the theory of ratification, counsel for defendant now interpose the following:

First: that the instrument sued on and the series of which it was one, constituted a forgery—a crime—not the subject of ratification, and which public policy forbids.

Second: that the defendant had no authority itself to loan to any one person the sum of $100,000.00, and to issue certificates of deposit therefor, or to issue certificates of deposit for that amount, or for any amount, when the money was not in fact deposited.

Third: that the payment of the two certificates, knowing them to be forged and issued without authority, did not bind the bank to pay other certificates issued by Leps in the same manner, especially when the plaintiff was in no way prejudiced thereby.

Before considering the subject of ratification let us first determine whether the issuance of the certificates to Segal constituted a forgery or a violation of any other penal statute of the State. It is conceded that Leps as cashier had authority, in the regular and legitimate way, to receive money on deposit and to issue certificates therefor. This he might do as incident to a legitimate banking business. And with proper motives and in the interest of the bank, no doubt he would be apparently clothed with authority to issue such certificates against the proceeds of a note discounted for a customer; though this would be rather an unusual transaction;

for what would be the object of first borrowing from a bank and then reloaning the money to it? Such a proposition from a borrower would on its face call for explanation. In the case before us the transaction was so large, and so extraordinary, and so manifestly corrupt and fraudulent, that the immediate participants could have intended nothing other than fraud upon the bank. It does not appear just what the capital, surplus and undivided profits of the bank amounted to, but it is suggested in argument that they did not exceed $80,000.00. If so, the defendant could not lawfully have loaned to any one person over $16,000.00. And as the transaction, such as it was, was withheld from the books of the bank by Leps, no doubt with the knowledge and concurrence of Segal, both participants were guilty of an offense against the laws of the land. But did the issuance of the certificates of deposit constitute forgery on the part of Leps? Blackstone defines forgery to be the fraudulent making or altering of a writing to the prejudice of another man's rights. 4 Bl. Com. 247. Wharton's definition is: "Forgery is the fraudulent falsifying of an instrument to another's prejudice." 1 Wharton Crim. Law, (8th ed.), §653. Other law writers define it in substantially the same way. 2 Bishop Crim. Law, (9th ed.), pp. 413-414; *Arnold* v. *Cost,* 3 Gill & John. (Md.), 219; 22 Am. Dec. 302, note 306. Our own decisions are in accord with these definitions. *State* v. *Pine,* 56 W. Va. 1; *State* v. *Lotono,* 62 W. Va. 310; *State* v. *Talip & Homad,* 90 W. Va. 632. In the latter case we held that raising the declared value in a receipt given by an express company for the purpose shown did not constitute forgery because not prejudicial to the express company. Within these definitions was Leps guilty of forgery? It has been questioned whether one can be guilty of forgery in signing his own name officially or personally. In Tennessee a justice of the peace was convicted of forgery for falsely incorporating in a cost bill against the county items of cost in vagrancy cases not chargeable against the county and so as to deceive. *Luttrell* v. *State,* 85 Tenn. 232, 4 Am. St. Rep. 760. It was held in that case that forgery may be committed by fraudulently making over one's own signature a writing which if genuine would possess

legal efficacy, and which, though not genuine, may operate
to the prejudice of another's rights.  In Kentucky we find
it decided that, "the offender may be guilty of the false mak-
ing of an instrument, although he signed his own name, if
it is false in a material part, and calculated to induce an-
other to give credit to it as genuine and authentic when it
is false and deceptive." *Commonwealth* v. *Wilson,* 89 Ky. 157,
25 Am. St. Rep. 528, and note.  This rule was applied in the
case just cited, to a surveyor who made and certified over his
signature with others a false plat and survey.  In another
case, in California, defendant was found guilty of forgery
for uttering as true a false, forged and counterfeited power
of attorney.  He fraudulently procured a man who had no
account in a bank, but of the same name as one who had, to
execute to him a power of attorney to collect the money, and
succeeded in doing so.  The court held the offense complete.
*People* v. *Rushing,* 130 Cal. 449, 80 Am. St. Rep. 141.  What
was the offense of Leps in this case?  He fraudulently issued
certificates of deposit aggregating $105,000.00, and delivered
them to Segal, or to Segal's agent, away from the bank, and
in another state, against the note of Segal for the like amount,
taking from Segal the sugar company bonds, and concealing
the transaction from the directors and other officers of the
bank; and that Segal conspired with him in the commission
of the crime, there can be little doubt.  That Segal placed
little if any value on his note and bonds, is manifest from
the readiness with which he surrendered the certificates
which remained in his control.  There is no evidence in this
case that he ever as much as requested the return of his note
or the bonds.  If he procured Leps to issue to him the certifi-
cates and to sign his name thereto as cashier for the purpose
of defrauding the bank, he was himself equally guilty of
forgery with Leps.

On the second proposition, want of authority of the bank
or of Leps to make a loan of $105,000.00 or to issue certifi-
cates of deposit in lieu thereof, as already indicated, the evi-
dence does not disclose the amount of the capital stock, sur-
plus and undivided profits; but we may assume that to have
warranted such a loan, the bank would have had to have cap-

ital, surplus and undivided profits equal to $500,000.00, a very unusual capitalization for a bank in so small a town as Keyser, a city of about 6,000, of which we can take judicial notice. *Welch* v. *County Court,* 29 W. Va. 63. We take like judicial notice that in towns and cities of the state banks exist, and of the fact that their operations are governed by reasonable rules and regulations, to which parties dealing with them, or in commercial paper, are deemed to have subjected themselves. *Lewis, Hubbard & Co.* v. *Montgomery Supply Company,* 59 W. Va. 75, 7 L. R. A. (N. S.) 132.

Let us return to the question of ratification, much relied on by plaintiff. We have already indicated the opinion that there was no intention manifested on the part of the board of directors, or of the committee thereof in charge, to ratify the fraudulent transactions of Leps. Indeed, quite the contrary purpose is disclosed by what was done. Nothing was done to evidence such a purpose but the entry on the ledger already referred to and payment of the two certificates of a former issue. It is contended by counsel for defendant, that before it can be rendered liable upon the principles of ratification, the burden rests upon plaintiff to show power and authority in the corporation and its cashier and board of directors to negotiate the transaction; for it is argued there can be no ratification of a transaction which the corporation itself had no power to enter into; and, moreover, that there could be no ratification of the act of forgery, or of the crime of issuing certificates of deposit when no deposit of money was in fact made. A principal has no power or authority to ratify and confirm a transaction of his agent which he had no power himself to enter into. So held in *Bank* v. *Armstrong,* 152 U. S. 346; *Norton* v. *Shelby County,* 118 U. S. 425; Mechem on Agency, (2nd ed.) §§ 358, 359.

Payment of the two forged certificates of a former issue, no one having been deceived thereby, imposed no obligation on the bank to pay the others. *Murphy* v. *Skinner,* 160 Wis. 554, 152 N. W. 172, Ann. Cas. 1917-A 817; *Walters and Harvey* v. *Munroe,* 17 Md. 150; *Whitefield* v. *Munroe,* Id. 135; *People* v. *Bank,* 75 N. Y. 547; *Cohen* v. *Teller,* 93 Pa. St. 123; 2 Dan. Neg. Inst. § 1353, p. 364.

Whether a forged instrument may be the subject of ratification the authorities are not altogether in accord. Several Massachusetts cases would seem to hold that such instruments may be ratified by the one whose name was forged where by his act he has manifested an intention to be bound thereby. *Greenfield Bank* v. *Crafts*, 4 Allen, 447; *Bartlett* v. *Tucker*, 104 Mass. 336; 6 Am. Rep. 240; *Wellington* v. *Jackson*, 121 Mass. 157; *Bank* v. *Copp*, 184 Mass. 328. As we have already said, there was nothing in the conduct of the bank's officers manifesting an intention to ratify the transactions of Leps, the cashier; quite the contrary. No one was prejudiced by what was done by the directors in reference thereto. The decisions of this court relied on by plaintiff for the proposition that an unauthorized act of an agent or officer of a corporation may be ratified by the directors and become binding on the corporation, if they adopt it and appropriate the consideration therefor, are not forgery cases. *First National Bank* v. *Kimberlands*, 16 W. Va. 555; *Third National Bank* v. *Laboringman's Merc. & Mfg. Co.*, 56 W. Va. 446; *Chafin* v. *Main Island Creek Coal Co.*, 85 W. Va. 459. In the *Kimberlands case* it was held that the directors of a bank may ratify any act done or contract made by an officer without authority, which they could have authorized him to do or to make, and that the acceptance of the benefit of the transaction amounted to an implied ratification of the contract. In *Chafin* v. *Coal Company*, the question was whether the company was liable to an agent employed by its president to acquire coal lands for the compensation agreed upon, being half the difference between the price which the company was willing to pay and what the agent should succeed in purchasing it for. One of the defenses was that it did not appear that defendant had authority under its charter to make such a contract, and that the president was not shown to have been authorized to make such a contract in its behalf. It was decided that as the defendant was a purely private corporation and the contract violated no principle of public policy and was not prohibited by law, the defendant on principles of estoppel could not defend on the ground that the act was *ultra vires;* that having received the benefits under the con-

tract, it was estopped to deny its power in so far as such estoppel was necessary to do justice between the parties. Citing for the proposition a number of cases. In the case of a bank the public are more or less interested. The bank, for the protection of stockholders and depositors, is controlled by positive law. One of the inhibitions is against loaning money to any one person in excess of twenty per cent of its capital, surplus and undivided profits; and the issuance of a certificate of deposit where no money or money's worth was deposited, would constitute a crime, the crime of forgery. An offense of such character against the laws could under no circumstances become the subject of ratification. Besides, to entitle one to the benefit of any *ultra vires* contract, the contract must have been fully performed by him, and the other party must have received and retained the benefits. 1 Michie on Banks and Banking, p. 689. What has Segal done except to execute his worthless note, and to deposit with it bonds of little if any value, with Leps? And what benefits have accrued to the bank as against the several thousand dollars of outstanding and forged certificates of deposit? Practically nothing.

The weight of authority is, we think, that a forgery is not susceptible of ratification. 1 Mechem on Agency, (2nd ed.), 361. And it is so concluded in 3 R. C. L., p. 1107-8, sec. 324, citing the cases; and unless upon some principle of estoppel, as by acceptance of the benefits, and a plain intention to be bound, the corporation defrauded cannot be bound on the principle of ratification. We think the effect of the Massachusetts cases are in accord with this proposition. In 2 Daniel on Neg. Inst. (6th ed.), §1352b, we find: "Public policy would seem to interdict the ratification of a forged signature, except as to those who, acting innocently, so change their relations upon its faith as to estop the party from pleading the truth of the matter." In *Shisler* v. *VanDyke*, 92 Pa. St. 447, 37 Am. Rep. 702, it was held: "A promise, by one whose endorsement on a note is forged, to pay the same is void as against public policy." In Ohio, we find two cases, the first of which says: "A forged instrument is not merely voidable, but absolutely void, and there can be no ratification of a

forgery that will make the instrument valid." *Shinew* v. *Bank*, 84 Ohio St. 397. The second case holds that: "A mere promise by the supposed maker to pay a forged note, without any new consideration, and without circumstances creating an estoppel against the promisor, does not become a binding contract creating a liability to pay such note." *Workman* v. *Wright*, 33 Ohio St. 405. And it is said in a Maryland case that a "declaration by the maker that the note is right in such a case, upon its being presented to him after it was transferred to the plaintiff, does not estop him from setting up the defense of forgery of the endorsement, but it would be otherwise if the declaration were made before the transfer, and the plaintiff should take the note upon the faith of such declaration." *Lancaster* v. *Baltzell*, 7 Gill & Johns. (Md.), 468, 28 Am. Dec. 233; *Pioneer Etc. Power Co.* v. *Goodman*, (Mo. App.), 201 S. W. 576.

What then remains in this case to estop the defendant from interposing the defense of want of authority and of forgery against the plaintiff as a holder of the paper sued upon? Section 23 of our negotiable instruments law, chapter 98-A, Barnes' Code 1923, provides: "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party thereto, can be acquired through or under such signature unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority." If it be argued that Leps was employed by defendant as cashier, with the usual powers of such an officer, and signed the paper sued on with his own hand, the answer is that a person dealing with an agent, knowing that he acts only by virtue of a delegated power, must at his peril see that the paper on which he relies comes within the power under which the agent acts. And this applies to every person who takes the paper afterwards, for it must be kept in mind, says high authority, that the protection which commercial usage throws around negotiable paper cannot be used to establish the authority by which it was originally issued. *The Floyd Acceptances*, 7 Wall. 666, 19 Law Ed. 169, p. 173. *Marsh* v. *Fulton*

*County,* 10 Wall. 676. "The fact that a person is an innocent holder of a forged bill or note does not render the paper valid, nor does the good faith of such a holder confer upon him any equity as against the one whose name is forged;" and the defense of forgery may be interposed against such holder, "unless he has so acted in respect to the instrument as to estop him from interposing this infirmity." 1 Joyce's Defenses to Commercial Paper, (2nd ed.), secs. 191-195. "It is well understood that a forged note is by the common law absolutely void, even in the hands of an innocent purchaser for value, unless it has in some way been ratified by the payor named in it." *Vannatta* v. *Lindley,* 198 Ill. 40. Point 10 of the syllabus in *Benedum* v. *First Citizens Bank,* 72 W. Va. 124, should not be interpreted as opposing the principle upon which we are disposing of this case. The opinion in that case disposes of the proposition without reference to the facts, and so far as disclosed did not involve the question of power or authority, or the offense of forgery involved in this case. In the comparatively recent case of *Pettyjohn* v. *Bank,* 101 Va. 111, decided in 1903, after the adoption of the uniform negotiable instruments law, it is said: "If, therefore, Pettyjohn is to be held on these notes it must be on the ground that he has precluded himself from setting up the forgery, or want of authority."

As a general rule the doctrine of estoppel is not applicable except in cases where the person against whom it is invoked has by his representation or conduct misled another to his injury, so that it would be a fraud to allow the true state of facts to be proved.

Neither the negotiable instrument law, nor any of its parts, ought to be interpreted as being in conflict with the common law, nor with any other laws already on the statute books, nor with settled public policy. *Twentieth Street Bank* v. *Jacobs,* 74 W. Va. 525; *Coal & Coke Ry. Co.* v. *Conley and Avis,* 67 W. Va. 129; *Eskridge* v. *Thomas,* 79 W. Va. 322. Quoting from a Kentucky case, the court says in the latter case: "The negotiable instruments statute is a most comprehensive piece of legislation. It goes into minutest details in dealing with the subjects embraced in it. The whole scope of it is shown to be the dealing with commercial paper, so as

to protect innocent purchasers against mere defenses available as between the ·original. parties. It gives such paper currency, free from original defenses. But it applies to paper that might have been obligatory between the parties. But, where the parties were never bound because the law made the note void, as contrary to public policy as expressed in ·the statutes, the negotiable instruments act doeš not apply, and ought not to. The prevention of crime is of more importance than the fostering of commerce. The latter act should be read in view of its purpose, and not as intending to repeal other statutes passed in the exercise of the police power of the state to suppress crime and fraud.''

It is objected to the defenses interposed that they are not available because of the lack of proper pleading—*non est factum*—by the defendant bank. Section 23 already quoted, would seem to imply the defense of forgery under the general issue. Respecting sections 39 and 40, chapter 125, Code, the first requires pleas in abatement and of *non est factum* to be verified, and when necessary they cannot be received or filed without verification. Section 40 establishes merely a rule of evidence, and when the declaration or other pleading alleges that any person made or endorsed, assigned or accepted any writing, no proof of the handwriting of such person should be required unless the facts be denied by an affidavit with the plea which puts it in issue. *Parfitt* v. *Veneer & Basket Co.,* 68 W. Va. 438; *Rhoades* v. *C. and O. Ry. Co.,* 49 W. Va. 494. And it seems settled that the defense òf forgery, as of almost all other defenses going to the denial of plaintiff's cause of action, may be proven under the general plea of non assumpsit. Kittle's Mod. Law of Assumpsit, §364, p. 551; *Sutherland* v. *Guthrie,* 82 W. Va. 419; *Dudley* v. *Collieries Company,* 125 Va. 701, 100 S. E. 466.

For the foregoing reasons we are of opinion that the plaintiff has not shown in itself right of recovery; and our judgment will be that plaintiff take nothing by its action, and that defendant recover its costs in this court and in the circuit court herein expended.

*Reversed; judgment entered for defendant.*