# CHARLESTON.

MERCANTILE BANK OF MEMPHIS *v.* BOGGS.

Decided November 24, 1900.

1. NOTE—*Transfer—Bona-fide Holder—Collateral Security.*

A valid pre-existing debt is *prima facie* a valuable consideration for the transfer before maturity of a negotiable note in the hands of a *bona-fide* holder, without notice of latent equities between the maker and the first indorser, although such note be held merely as collateral security for the payment of such debt. (p. 291).

2. SPECIAL POINTS—*How Limited.*

The third point in the syllabus of *Hotchkiss* v. *Plaster Co.*, 23 S. E. 576, (41 W. Va. 358), approved; and the second point in the syllabus of *Trust Co.* v. *McClellan*, 21 S. E. 1025, (40 W. Va. 405), limited to negotiable paper subject to the laws of Pennsylvania. (p. 291).

Error to Circuit Court, Clay County.

Action by the Mercantile Bank of Memphis against J. M. Boggs. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

W. E. R. BYRNE, for plaintiff in error.

HENRY B. DAVENPORT, JR., for defendant in error.

DENT, JUDGE:

The case of the Mercantile Bank of Memphis against J. M. Boggs, from the circuit court of Clay County presents the question as to whether a pre-existing debt is a valuable consideration for the transfer of a negotiable note in the usual course of business. Judgment was rendered in the circuit court in favor of the plaintiff against the defendant for the sum of six hundred and seventy-seven dollars and sixty-seven cents.

The facts are that one Gerald M. Fennell on the 23d day of August, 1895, obtained from J. M. Boggs, his negotiable note for the sum of five hundred and eighty-seven dollars, payable November 1, 1896, at the National Exchange Bank at Weston, in consideration of an insurance policy to be thereafterwards delivered, but which was never received by Boggs. This note was on the 29th March, 1896, transferred without recourse along with other securities to the plaintiff to secure a large indebtedness owed by said Fennell, and which the plaintiff had refused to renew. When the note became due, the defendant refusing to pay the same, plaintiff brought suit. Defendant appeared, plead *nil debit* and filed special pleas in writing setting up failure of consideration and notice thereof to the plaintiff. Plaintiff filed a special replication admitting the failure of consideration, but denying notice of the same. There are some technical objections raised to the pleadings which are hardly worthy of consideration, as the real issue between the parties is without complication. The defendant objects to the special replication and claims the issue of failure of consideration should have been made with a general replication. This is true where the plaintiff desires to deny the failure of consideration alleged, but where he does not wish to do so, and only seeks to controvert the plea in part, he can only do this by special replication. The evidence introduced by the defendant to sustain his plea was rejected. Of this he cannot complain as it was introduced on a question not in issue but admitted, to-wit, failure of consideration and fraudulent procurement. The only real issue of fact between the parties was as to whether the plaintiff had notice of the failure of consideration or fraud in the procurement of the note. On this issue the defendant offered no evidence. The question of law involved arose on the motion to reject the special replication for the reason that the plaintiff admitted therein that the

consideration for the transfer to it of the negotiable note was a pre-existing debt alone. In the case of *Hotchkiss* v. *Plaster Co.,* 41 W. Va. 357, this Court held that the transfer of a negotiable note before maturity to an innocent holder as collateral security for a valid pre-existing debt without more would be sustained as against the equities existing between the maker and the original endorser. This was done as is said in that case because "it would be useless and unwise for any state court to stand out against the clear and decided weight of authority upon a question of commercial law." *Railroad Co.* v. *National Bank,* 102 U. S. 14; *Railroad Co.* v. *Burke,* 22 Grat. 254. Apparently the Court took the opposite view in the case of *Union Trust Co.* v. *McClellan,* 40 W. Va. 405. But in that case the Court was construing a negotiable note which was subject to the laws of the state of Pennsylvania and not the laws of this State, and the syllabus by misadvertance failed to show this as it should have done, as will be made clear by an examination of the opinion. In that case also the holder failed to show want of notice of the equity making its title bad, so the two first points in the syllabus should be read and construed together. The second point alone construes the law properly according to Pennsylvania decisions. While there is much conflict of authority, yet the greater weight is in favor of the construction of the law as given by the Supreme Court of the United States in the case of the *Railroad Co.* v. *National Bank* before cited. The rule thus established appears to be very broad and without just foundation for if the pre-existing debt is good there is no substantial reason why the maker of a negotiable note fraudulently obtained should be compelled to pay the same, for the holder has suffered no loss therefrom and if the pre-existing debt is bad and of no value why should it be said that it was transferred for value when none was given for it, simply because the holder becomes a party to the note? On the same theory a holder who takes it as a gift or without other consideration than that he merely accepts it, can compel the defrauded maker to pay it. And although the pre-existing debt only amounted to ten *per centum* of the fraudulent note the whole of it would have to be paid and yet this is held not to be the law. Daniel on Negotiable Instruments, 832a. The rule is stated in Colebrooks on Collateral Securities to be: "The pledgee of negotiable instruments properly indorsed and delivered where indorsement is required or by delivery only,

where indorsed in blank or made payable to bearer, so that he becomes a party thereto receiving the same before maturity in good faith and without notice of equities as collateral security for a valid antecedent debt without more is a holder for value in the usual course of business." The meaning of which is that all the holder has to allege and show to recover on such a note is that he took the same without notice of equities to hold as collateral security for the payment of a valid pre-existing debt which makes a *prima facie* case, and if there is anything else connected with the transaction that would defeat recovery it is matter of defence. Under this rule it is presumed that the pre-existing debt was collectible at the time of the transfer of the negotiable note and that payment was extended at least to the amount thereof until maturity and if the pre-existant debt was actually valueless and no extension of time was given, the proof thereof devolves upon the maker of the note. In the present case the defendant proved nothing. He claims that because the note was given for a much larger debt the rule does not apply, but it is shown in the evidence that collateral was given and promises were made to the full amount of the debt and assurance of payment made at maturity, some of which proved worthless. The cashier of the plaintiff testified that: "When Fennell's note matured the bank declined to renew it and demanded payment of Fennell. But the bank afterwards agreed to accept the collateral he offered the bank on the partial payment he made at the time with the understanding that all the collaterals would be paid at maturity which would liquidate the debt with the other payment that he would make." This is not only evidence from which the jury could infer forbearance or extension of time, but is positive evidence that such extension was granted until the maturity and by reason of the collateral and in the absence of proof of the insolvency of Fennell at this time is *prima facie* conclusive as to loss sustained by plaintiff by reason of acceptance of the collateral. Plaintiff, under the rule was not bound to prove Fennell's solvency, but if the defendant wished the advantage thereof he must prove his insolvency and knowledge thereof in plaintiff as affecting its good faith in accepting the collateral. Defendant also claims that the acceptance of the assignment without recourse was evidence to go to the jury along with the excluded evidence tending to show knowledge of his equities or bad faith in the plaintiff. The assignment was before

the jury along with the admission in the pleadings that the note was without consideration or fraudlently procured and the jury passed on it without instruction and found for the plaintiff and its verdict is conclusive as to all disputed facts in the case.   Nor has the defendant showed himself entirely free of blame.   He made his negotiable note on the 23d day of August, 1895, and delivered it to Fennell.   The latter retained it until 29th March, 1896, and yet the defendant made no effort to prevent its negotiation before its maturity.   Had he done so, he might have prevented it or secured its payment out of Fennell before he disappeared with all his effects or given the plaintiff warning so it could have otherwise secured its debt.   The law is well established that where one of two innocent parties must suffer by the act of a third, the one who by his conduct enabled such third person to cause the loss must bear it.   *Bank* v. *Johns,* 22 W. Va. 526; *McConnell* v. *Rowland,* decided at this term.

There appears nothing in the record to take this case out of the general rule as established by the decisions of the courts of England, the United States and at least twenty states.   Opposed to it are the decisions of twelve states, not including Virginia and West Virginia.   New York is irreconcilably on both sides.   4 Am. & En. En. Law (2d Ed.) 290, 293.   To avoid conflict of authority with regard to questions of commercial law in this State we are compelled, and it is proper and right that we should follow the decisions of the Supreme Court of the United States, although doubtful of their justice and equity so long as they do not plainly lead us into a violation of the laws of God.   As to the latter, the highest court in the land is entitled to have all doubts resolved in its favor.

The judgment, though harsh, must be affirmed.

*Affirmed.*