## INTERNATIONAL FINANCE CORPORATION v. PEOPLE'S BANK OF KEYSER.

District Court,. N. D. West Virginia. April 4, 1928.

No. 195.

**1. Bills and notes ⬤⟲338—Finance company, purchasing certificate of deposit after inquiry of issuing bank's cashier, held "holder in due course" (Code W. Va. c. 98a, § 52).**

Finance company, engaged in business of discounting trade acceptances, purchasing certificate of deposit from broker after making inquiry and receiving confirmation of validity of certificate from cashier of issuing bank, *held* "holder in due course" for value before maturity, and without notice of any invalidity, within Code W. Va. c. 98a, § 52.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

**2. Courts ⬤⟲372(1)—Federal courts, in determining questions of general commercial law, are not controlled by state court decisions.**

Courts of the United States, in determining questions of general commercial law, are not controlled by the decisions of the state court.

**3. Forgery ⬤⟲6—Bank cashier, by fraudulently issuing certificate of deposit for which bank received no consideration, did not commit "forgery."**

Cashier of bank, by fraudulently issuing certificate of deposit, for which bank received no consideration, and which was misused by payee, did not commit a "forgery," which is the fraudulent making or alteration of a writing to the prejudice of another man's right; cashier being the proper official of the bank to issue such a negotiable instrument.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

**4. Bills and notes ⬤⟲113—Bank held estopped to assert that certificate of deposit was forgery, where its cashier, in answer to inquiry, had confirmed its validity.**

Where finance company, before purchasing certificate of deposit from broker, was informed by cashier of issuing bank, in answer to telegraphic inquiry, that certificate was valid and would be paid at maturity, bank was estopped to assert defense of forgery against it, even if such defense would otherwise have been available.

At Law. Action in assumpsit by the International Finance Corporation against the People's Bank of Keyser. Judgment for plaintiff.

Hugh H. Obear, of Washington, D. C., and R. A. Welch, of Keyser, W. Va., for plaintiff.

Charles J. Faulkner, of Martinsburg, W. Va., and Charles N. Finnell, of Keyser, W. Va., for defendant.

BAKER, District Judge. This is an action of assumpsit, brought by the plaintiff, a corporation engaged in commercial banking or the discounting of paper in the city of Washington, D. C., upon what purports to be a negotiable certificate of deposit, dated December 31, 1921, for the sum of $10,000, which plaintiff claims was issued by the defendant to one Adolph Segal, and which plaintiff further claims was acquired by it for value in due course before maturity.

On January 7, 1922, a broker by the name of W. P. Whitaker came to the office of the plaintiff, and in the regular course of business offered for sale a certificate of deposit of the People's Bank of Keyser, W. Va., in the following words and figures:

"People's Bank of Keyser.

"No. 315. Keyser, West Virginia, December 30, 1921.

"Adolph Segal has deposited in this bank ten thousand dollars, payable to the order of himself, with interest at three per cent. per annum, one hundred twenty days, on return of this certificate properly indorsed.

"Not subject to check.

"$10,000.00 T. D. Leps, Cashier."

On the back appear the indorsements: "Adolph Segal." "International Finance Corporation, W. L. Batchelor, Treasurer."

Arthur C. Lampe, then secretary of the International Finance Corporation, plaintiff, states that it was late in the afternoon of January 7, 1922, when Mr. Whitaker approached him at the office of plaintiff and offered the foregoing certificate of deposit for sale to his company. Lampe told Whitaker, the broker, that he would have to make some verification and investigation before he could give him an answer as to his company purchasing the certificate of deposit offered. Lampe thereupon immediately sent the following telegram to the People's Bank of Keyser, W. Va.:

"January 7, 1922.

"People's Bank of Keyser, Keyser, West Virginia. Is there any reason why your certificate of deposit number three fifteen December thirty-first one hundred twenty days ten thousand dollars bearing three per cent. interest issued in the name of Adolph Segal should not be paid Stop Wire answer collect Monday morning.

"Charge to I. F. C.

"International Finance Corp."

Instead of replying to this telegram by wire Monday morning as requested, two letters were received by the plaintiff, both on the letterheads of the defendant and addressed to International Finance Corporation, Washington, D. C. The first, being dat-

ed Keyser, W. Va., January 8, 1922, was as follows:

"Gentlemen: We have your wire in reference to our C. D. for $10,000.00, No. 315. This certificate is issued for one hundred twenty days and not on demand. Mr. Segal has been notified of this and you will receive information concerning same Monday or Tuesday.

"Yours very truly,

"T. D. Leps, Cashier."

The second letter, dated January 9, 1922, was as follows:

"Gentlemen: We did not quite understand your telegram of Saturday, and we herewith beg to inform you that this certificate of $10,000 will be met promptly at maturity, if this is the information that you wish, but will not be accepted on demand. Trusting that this is the information that you wish, we are,

"Yours very truly,

"T. D. Leps, Cashier."

There is also filed with the testimony of Mr. Lampe on behalf of the plaintiff the following letter:

"Wilmington, Delaware, Jan. 10, 1922.

"International Finance Corporation, Metropolitan Bank Building, Washington, D. C.—Gentlemen: Certificate of deposit No. three hundred fifteen (315), issued to me by the People's Bank of Keyser, Keyser, West Virginia, dated December 31, 1921, due in one hundred and twenty days, and bearing three per cent. interest, and presented to you for discounting by Mr. W. P. Whitaker, bears my indorsement.

"Very truly yours,        A. Segal."

After receipt of the foregoing communications, the certificate of deposit sued upon in this cause was presented to the executive committee of the plaintiff and purchase thereof authorized on January 10, 1922. On the following day the certificate of deposit in question was actually purchased from Mr. Whitaker for the sum of $9,270.68, as evidenced by the following check filed with the testimony of Mr. Whitaker:

"Washington, D. C.

Jan. 11, 1922.   No. 3532.

"Continental Trust Company, of Washington, D. C.:

"Pay to the order of W. P. Whitaker $9,270.68, exactly nine thousand two hundred seventy dollars sixty-eight cents, exactly.

"International Finance Corporation,

"David P. Smith, Treasurer.

"Ben L. Prince, Vice President."

Along with the letter of January 8, or January 9, from T. D. Leps, cashier, to International Finance Corporation, was sent by Leps, cashier, copy of financial statement of People's Bank of Keyser in words and figures following:

"People's Bank of Keyser.

"Capital, Surplus and Undivided Profits, $80,000.00.

"Keyser, W. Va.

| | | | |
|---|---|---|---|
| Liberty bonds.. | $ 73,346.56 | Capital ........ | $ 50,000.00 |
| Bonds .......... | 170,906.52 | Surplus ........ | 25,000.00 |
| Loans ..:....... | 321,227.92 | Upfts .......... | 17,795.61 |
| Banking house and fix....... | 71,382.82 | Cash. Ck........ | 1,136.39 |
| Expense ........ | 10,400.86 | Due banks...... | 1,541.52 |
| Due from bank | 40,496.27 | Bills payable... | 60,000.00 |
| Cash .......... | 10,069.46 | Sav. ........... | 225,831 78 |
| | | Deposits Com... | 314,525.00 |
| | $697,830.41 | | $697,830.41 |

"Copy of report Nov. 30, 1921.

"Stockholders' Committee."

The plaintiff was not a bank of deposit, but what is generally known as commercial bankers, engaged in the discount of trade acceptances, certificates of deposit, purchase of warehouse receipts, accounts receivable, and discounting mortgages or deeds of trust. It had a paid-up capital in excess of $900,000 and in addition a surplus in excess of $100,000.

Testimony taken shows that on December 30, 1921, this defendant, People's Bank of Keyser, W. Va., a state bank regularly engaged in a general bank business, issued through its cashier, T. D. Leps, a series of six certificates of deposit, for the sum of $10,000 each, to Adolph Segal, one of which was sold to the plaintiff in this case, three of which were transferred to Bethlehem Construction Company, and two of which Segal retained in his possession. Segal executed his notes for $160,000 to People's Bank of Keyser, at the time these and other certificates were issued, and deposited with said notes first mortgage bonds of Wilmington Sugar Refining Company in the sum of $200,000, and delivered these notes and bonds to T. D. Leps, cashier.

The testimony shows that Leps had been cashier and an active officer of the defendant bank from 1912 until the bank closed in April, 1922. He received Segal's notes and the collateral deposited therewith, and then issued said certificates of deposit upon printed forms regularly used by the bank, and signed his own name as cashier to each certificate.

The genuineness of the signature of T. D. Leps, cashier, to each of the certificates of deposit in question, is abundantly proven. Cashier Leps testifies no record was made on the books of the People's Bank of Keyser.

He filed the notes for $160,000 with his private papers in a drawer to the left of the cashier's cage. The bonds put up as collateral were wrapped up and placed in the book vault of the bank.

Cashier Leps' deposition was taken in the city of Moundsville, W. Va., while he was confined in the penitentiary upon conviction for a felony. Upon cross-examination he testified as follows:

"Q. Mr. Leps, at the time you issued the certificates of deposit sued upon, a photostatic copy of which has been filed by you, you issued this certificate of deposit as cashier of the People's Bank of Keyser in good faith, did you not? A. I did.

"Q. At the time you issued this certificate of deposit sued upon, you were of the opinion that the note filed with you and the mortgage bonds of Wilmington Sugar Refining Company placed with you as collateral security were good, did you not? A. I did."

The certificates of deposit were issued by Cashier Leps upon printed forms regularly used by the bank, and his name as cashier regularly signed thereto.

Adolph Segal indorsed the certificate in question, purchased by the plaintiff, and delivered the same to W. P. Whitaker, the broker from whom plaintiff purchased same, after being assured, as hereinbefore set out, that the certificate was genuine and would be paid at maturity. The president of the defendant bank, F. H. Babb, learned on April 2, 1922, that Leps, cashier, had issued these certificates of deposit, when he received a letter from the plaintiff, asking about some other certificates of deposit issued by Leps. Thereupon he went to Washington, and afterwards to Philadelphia, to see Segal. Segal returned to Babb two of the $10,000 certificates. Two of the certificates sold to Bethlehem Construction Company became due at about this time and were paid by defendant bank. The banking commissioner of West Virginia investigated the defendant bank about this time, and on account of this and other irregularities in connection with Leps' conduct took charge of the bank and closed its doors on April 27, 1922. Charles N. Finnell was appointed receiver shortly afterwards, qualified as such, and is still acting in that capacity.

Plaintiff presented the certificate held by it to the receiver at its maturity for payment, and payment thereof was refused, and said certificate was returned to plaintiff unpaid, with refusal by state banking commissioner noted. This suit was then instituted against the defendant to recover judgment for the amount due on said certificate of deposit.

[1] *Was the plaintiff a holder in due course for value before maturity and without notice of any infirmity?*

Who holder in due course? "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Barnes' Code W. Va. c. 98a, § 52.

The certificate of deposit in question, according to the evidence in this case, was purchased by the plaintiff in the regular course of its business, for value and before maturity, by a commercial banking house. There is no evidence even attempting to show that the plaintiff was not and is not an innocent holder. There is no evidence attempting to show that the plaintiff did not pay value for this certificate of deposit. On the contrary, it is affirmatively shown (a) that plaintiff purchased in due course; (b) for value; (c) before maturity; (d) without any knowledge of infirmity—the four essentials necessary to obtain perfect title to any piece of commercial paper.

The defendant seeks to escape liability upon this negotiable instrument upon the theory that it is a forgery, basing this contention upon the decision of the Supreme Court of West Virginia in the case of Merchants' Bank & Trust Co. v. People's Bank of Keyser, 99 W. Va. 544, 130 S. E. 142, in which the Supreme Court of West Virginia held, under circumstances different from this case, that a certificate of deposit issued by this same defendant was a forgery, and denied recovery.

[2] Courts of the United States, in determining questions of general commercial law, are not controlled by the decisions of the state court. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Brooklyn, etc., Railway Co. v. National Bank, 102 U. S. 14, 26 L. Ed. 61. The late Judge Rose, of the Fourth Circuit Court of Appeals, most admirably treated this question in the third edition of his Federal Jurisdiction and Procedure, § 603:

"It is desirable that state and federal courts shall apply the same law to similar state of acts. It is also true that it is highly expedient that commercial transactions, frequently extending, as they do, across state lines, shall be governed by a law uniform

throughout the nation. Only the Supreme Court of the United States is so situated that it may hope that its views will, in the long run, be accepted in all parts of the Union. It has, therefore, deemed it wise in such matters to follow its own opinion.

"The law of negotiable instruments, the construction of insurance contracts, the liability of common carriers, the validity of the stipulations in their bills of lading, the measure of damages in suits against them, the law of master and servant, are among the questions of commercial law as to which the federal courts do not feel constrained to follow the state decisions. They, of course, are bound by any valid and applicable state statutes, and the adoption by a number of the states of uniform laws on many such subjects has narrowed the field in which a divergence between state and federal rulings is still possible.

"The Uniform Negotiable Instruments Act has codified much of the unwritten law on that subject. It has been adopted by the Legislatures of nearly all the states and has thus become a part of their statutory laws. A settled construction put upon any of its provisions by the highest court of a state is binding upon the federal tribunals when dealing with a contract governed by the law of that commonwealth. In the case of divergent interpretations by the highest court of different states, the federal courts may conceivably be called upon to hold that the same words mean one thing in one state and something else in its next-door neighbor. The whole subject of when and how far the federal courts must follow the decisions of those of the states is reviewed in the case of Kuhn v. Fairmont Coal Co., 215 U. S. 349 [30 S. Ct. 140, 54 L. Ed. 228]."

[3] A careful study of the case of Merchants' Bank & Trust Co. v. People's Bank of Keyser, 99 W. Va. 544, 130 S. E. 142, is convincing that the Supreme Court of West Virginia does not bottom its decision upon any interpretation or construction of the Negotiable Instruments Act, but reaches its conclusion upon the application of general principles of the general law of forgery, as it conceived the law to be, and the defendant in this case relies upon the principles of forgery to relieve it in this action.

*What is forgery?* Forgery is defined by Blackstone as "the fraudulent making or alteration of a writing to the prejudice of another man's right." 41 Bl. Comm. 247. One of the leading cases on this subject is People v. Mann, 75 N. Y. 484, 31 Am. Rep.

483. A county treasurer without authority issued and negotiated instruments for the payment of money purporting in the body to be the obligation of the county, but signed only by him in his own name, with the addition "treasurer." Held not to be forgery, the same not "being or purporting to be the act of another," within the statute. In the body of the opinion the court well said:

"One who makes an instrument signed with his own name, but purporting to bind another, does not make an instrument purporting to be the act of another. The instrument shows upon its face that it is made by himself, and is in point of fact his own act. It is not false as to the person who made it, although by legal intendment it would, if authorized, be deemed the act of the principal, and be as binding upon him as if he had actually made it. The wrong done, where such an instrument is made without authority, consists in the false assumption of authority to bind another, and not in making a counterfeit or false paper."

This principle is the exact one applicable to the case now under consideration. There was no false making of the certificate of deposit by another than the person who purported to sign it. Leps, the cashier, made it. It is admitted that the signature to the certificate of deposit is that of Leps, cashier, the man who purported to sign the instrument, and that he was actually the cashier of the defendant bank, as the certificate of deposit stated he was. Thus "the wrong done, where such an instrument is made without authority, consists in the false assumption of authority to bind another, and not in making a counterfeit or false paper" (not a forgery).

Bearing out this principle, attention is directed to the following cases: In re Tully (C. C.) 20 F. 813; State v. Young, 46 N. H. 266, 88 Am. Dec. 212; Barron v. State, 74 Ga. 833. The substance of all these cases which we have quoted and referred to is to the effect that Leps cannot have committed a forgery in executing and issuing the certificates of deposit in misuse of his authority, if in fact his signature is genuine, and what it purported to be. The falsity in the instrument here involved, if any, was only in its implied purport to bind the People's Bank of Keyser—only with regard to the extent of the agency. It does not relate to the genuineness of the signature or the making of the instrument itself.

It is well stated in 26 C. J. p. 899: "One who executes an instrument purporting on its

face to be executed by him as agent of a principal therein named, when in fact he has no authority from such principal to execute such instrument, is not guilty of forgery, as the instrument is nothing different from what it purports to be, the act being a false pretense; this is not a false making of the instrument, but merely 'a false and fraudulent assumption of authority." See, also, People v. Bendit, 111 Cal. 274, 43 P. 901, 31 L. R. A. 831, 52 Am. St. Rep. 186; State v. White, 46 La. Ann. 1332, 49 Am. St. Rep. 351.

In the case of Merchants' Bank & Trust Co. v. People's Bank of Keyser, 99 W. Va. 544, 130 S. E. 142, the case upon which the defendant especially relies in this action, the Supreme Court of West Virginia in substance held that the plaintiff could not recover "unless the bank is in some way estopped by its acts prejudicial to the holder of such paper."

A comparison of certain facts in the two cases shows a great difference in the rights of the plaintiffs:

In the Merchants' Bank & Trust Co. Case: (1) Plaintiff purchased certificate from a business stranger; (2) plaintiff's officers had some knowledge that the stranger's reputation was not good; (3) plaintiff made no inquiry regarding said certificate of deposit from the bank of issue, by wire or otherwise; (4) plaintiff failed to produce as a witness the officer who purchased the certificate to show the bona fides of the transaction.

In the present case under consideration: (1) Plaintiff purchased certificate from a known broker; (2) in this case the defendant did not even attempt to show anything derogatory concerning the reputation of the seller of the certificate; (3) plaintiff did not purchase certificate until it had made definite inquiry as to its validity by wire direct from the bank of issue, and had received confirmation of its validity from that bank; (4) plaintiff produced as a witness the officer who purchased the certificate in issue in this action.

Hence, even conceding that the Merchants' Bank & Trust Co. Case would be controlling, plaintiff has met the full conditions laid down in that case necessary to a recovery. Using the verbiage of the Supreme Court of West Virginia in that case: "The plaintiff has * * * shown by sufficient and competent evidence that it purchased the paper sued on in due course and for value

without notice of the fraudulent origin and subsequent dealings with the paper."

[4] *Query:* Is defendant estopped from setting up defense of forgery, even if applicable?

The certificate of deposit sued upon in this action was presented to plaintiff for discount on January 7, 1922. Before purchasing, plaintiff made full investigation, as shown by the telegram of January 7 to the People's Bank of Keyser and the letters of January 8 and January 9 to plaintiff, signed by the defendant's cashier, T. D. Leps. After receipt of the letters, plaintiff purchased the certificate sued upon on January 11. Unquestionably these letters induced plaintiff to purchase the certificate of deposit in question.

"Estoppel by misrepresentations, or equitable estoppel, is defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed either of property, of contract, or of remedy as against another person who in good faith relied upon such conduct and has been led thereby to change his position for the worse and who on his part acquires some corresponding right either of contract or of remedy. This estoppel arises when one by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts upon such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seeks to deny its truth, and to deprive the party who has acted upon it of the benefit obtained." 16 Cyc. 722; 21 C. J. § 116.

"Where the name of the maker or indorser of negotiable paper has been forged, and the holder has been misled to his prejudice by the conduct or promises of the person whose name has been forged, the latter will be estopped from pleading that the instrument is not genuine." 10 R. C. L. 810, § 118.

"A party, who by his acts, declarations, or admissions or by failure to act or speak under circumstances when he should do so, either designedly or with willful disregard of the interests of others, induces or misleads another to conduct or dealings which

he would not have entered upon, but for this misleading influence, will not be allowed afterwards to come in and assert his right to the detriment of the person so misled. That would be a fraud." Norfolk & Western Ry. Co. v. Perdue, 40 W. Va. 442, Syl. 4, 21 S. E. 755.

The same principle will be found in the following authority: Williamson & others v. Jones & others, 43 W. Va. 572, 27 S. E. 411, 38 L. R. A. 694, 64 Am. St. Rep. 891; Bates v. Swiger, 40 W. Va. 420, 21 S. E. 874; Atkinson v. Plum, 50 W. Va. 110, 40 S. E. 587, 58 L. R. A. 788.

Practically every element necessary to constitute an estoppel exists in the present case:

1. The defendant concealed the fact that the certificate purchased by plaintiff was forged, if such it was, and represented to the plaintiff that it was genuine.

2. The defendant had full knowledge of the true state of facts concerning the certificate at the time of plaintiff's inquiry by telegram.

3. The plaintiff knew nothing concerning this certificate, and made inquiry about it, and was ignorant of the truth of the matters represented by defendant in its letters.

4. Defendant made these representations with the intention that plaintiff should act upon them, and for the purpose of inducing plaintiff to purchase the certificate.

5. The plaintiff was misled to his injury by the representations of the defendant, as it purchased the certificate for value on the representations, and the defendant should now be estopped from claiming that it was not its paper because forged.

6. Defendant failed to speak when it should have spoken, and cannot now be heard when it should be silent.

Leps was cashier, an executive officer of the defendant bank. As cashier, "his specific duties are to attend to the correspondence. He receives all letters and communications addressed to the bank, and should make it his business to open and attend to the contents of same." McGee on Banks and Banking, 153.

It was within the sphere of Leps' authority to answer the telegram sent by plaintiff on January 7, 1922, as to whether the paper purporting to be the obligation of the defendant was its obligation, and, being the cashier of the bank, he was the proper person to whom to make inquiry concerning this certificate. His answer is the answer of the bank. No authority was required from the stockholders, directors, or any officer of the bank to authorize Leps to issue the certificate of deposit in question, and no countersignature or seal was needed to make it the legal obligation of the bank. The defendant bank elected Leps cashier, and placed him in a position of trust, and made the position for him to issue either good or fraudulent certificates of deposit.

Some one must lose the money involved in this action. Shall it be the plaintiff, who had nothing to do with placing Leps in a position of trust in the People's Bank of Keyser? Or shall it be the defendant in this action? "'When one of two innocent parties must suffer by the act of a third, he, who by his act has enabled such third person to cause the loss, must sustain it.' * * * This rule is absolutely necessary to the protection of innocent holders of commercial paper and the interest of the whole country demands that the rule be strictly adhered to. It is much better to suffer a few individuals to be defrauded out of their property, than to relax this salutary rule, and let the whole country suffer." First Nat. Bank of Parkersburg v. Johns, 22 W. Va. 535, 46 Am. Rep. 506; N. & W. R. R. Co. v. Perdue, 40 W. Va. 442, Syl. 3, 21 S. E. 755; McConnell v. Rowland, 48 W. Va. 279, 37 S. E. 586; Mercantile Bank v. Boggs, 48 W. Va. 293, 37 S. E. 587; National Bank of San Mateo v. St. John Whitney, 181 Cal. 202, 183 P. 789, 8 A. L. R. 298.

Plaintiff was induced to purchase defendant's certificate of deposit by the representation of defendant's cashier that this very certificate was bona fide and would be paid at maturity. Regardless of whether or not this certificate was a forgery, it was regular in its appearance and form, and it was within the scope of the cashier's authority to issue it. The cashier was the proper officer of the bank of whom to make inquiry concerning the certificate. It was within the scope of his authority to give information concerning the validity of the certificate. His answer is binding on the defendant. Tatum v. Commercial Bank & Trust Co., 193 Ala. 520, 69 So. 508, L. R. A. 1916C, 772.

To hold the certificate in this case was a forgery because of an alleged excess of authority on the part of the cashier to issue, would be to strike a deathblow to the law of negotiable instruments. The certificate sued upon is not forged paper in any sense, but is a genuine certificate, signed by the

cashier, the proper official of the bank, authorized to issue such instrument, and turned over by him to the payee. The fact that the bank received no consideration for the same, and that the payee misused it, is no defense as against the plaintiff, who is a holder in due course. Paton's Digest, vol. 2, p. 1353, and cases cited; Benedum v. Citizens' Bank, 72 W. Va. 124, 78 S. E. 656, Syl. 11.

If the contrary is held, who would dare accept these "couriers without luggage" in business transactions? If excess of authority constitutes an absolute defense in the hands of a bona fide holder, how is one dealing with certificates of deposit or certified checks to be protected? Can it be possible that, in order to protect oneself it is necessary to visit the bank itself, confer with its officers and directors, consult by-laws and minutes of the board of directors and of its several committees, in order to ascertain whether there be some want of authority on the part of the bank's cashier? In other words, to search each and every particular transaction with the same care and scrutiny that a buyer of real estate would make as to the title to the property to be conveyed to him? The mere statement of this proposition is enough to answer the defense interposed by the defendant bank on the ground of forgery.

From all the evidence and circumstances in this case it is clear, and I hold:

1. That the plaintiff is the holder in due course for value before maturity and without any notice of any infirmity of the certificate of deposit sued upon.

2. That the plaintiff has established by a clear preponderance of all the evidence that it acquired the certificate of deposit sued upon for value and is a holder in due course and without any knowledge of any infirmity therein.

3. That the cashier, Leps, of the defendant bank, had authority to execute certificates of deposit of the character here sued upon; that it is one of the specific duties of the cashier of any bank.

4. That the certificate sued upon was not a forgery.

5. That the defendant is estopped from setting up the defense of forgery.

An order may be drawn, giving judgment for the plaintiff.